WADE, *Appellant*, v. RINGO.

### Division One, May 28, 1894.

**Patent Right**: SALE: RESCISSION: MISREPRESENTATION. Representation as to the utility of a mechanical improvement made to a person experienced in the sale of the article who has every opportunity to test it and the opinion of friends and of an expert to aid him, though in fact untrue, do not constitute sufficient grounds for rescission of the sale of the patent right.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

This is a suit in equity to set aside a contract for fraud, etc., in which the trial court, after a full hearing, rendered a decree dismissing the bill on the merits. From that decree the plaintiff appealed in due form.

In rendering judgment on the circuit the trial judge, Hon. E. M. Hughes, delivered the following opinion:

"The object of this suit is to rescind and set aside a written contract between plaintiff and defendant, in which plaintiff transfers and sells to defendant a stock of furniture and other goods for and in consideration of an undivided one-half interest of defendant in an invention known as the Ringo folding bed and the letters patent applied for. The facts alleged by plaintiff in his petition why this contract should be set aside are as follows:

"*First.* That in the negotiations the defendant, for the fraudulent of purpose inducing plaintiff to buy of him his interest in said pretended invention, repre-

sented to plaintiff that his said Ringo folding bed was, and is, constructed and supposed to be constructed as to its general and main parts like the said Windsor folding bed and Andrews folding bed, to stand up like a clothes press when not in use, with a movable front, constituting the bedstead, secured in an outside frame work and about of the same size as the folding beds aforesaid; operates with weights; about six feet, eight inches high, four feet broad and about twenty-five to twenty-seven inches deep from front to rear at the base; which said Ringo folding bed was designed, as so represented by him, to entirely dispense with said weights and instead thereof (for the purpose of counteracting and balancing the weight of the folding part of said bedstead, bed spring, mattress, bedding, comforts, blankets, etc., usually used, together with a looking-glass of any size desired,) two spiral or coiled springs are to be used, the upper end of each of said springs fastened into a cross beam and the lower end of each of said springs so connected with the back and rear end of an iron circular track, that rollers secured to the bottom end of the folding part of said bed may, in unfolding and letting down of the bed, roll backward on the top side of said tracks (which are circular on the top side) and as they roll back are designed to increase the tension on said spiral springs so as to cause the increasing leverage and weight of the bed in being unfolded and let down to be equalized by the power of said springs, and also to have legs about one foot long to hold up the end of the bed when let down, the whole object and supposed purpose of said supposed improvement being to reduce the weight of the folding bed, so that it may be easily moved about upon four roller castors, by the housekeeper with safety, decrease the cost of construction and lessen the costs and expenses of shipment and thus produce a market for the sale of said Ringo folding

bed, so as to, in a large measure, take the place of other folding beds in common use and become a source of profit to the owner thereof.

"*Second.* Defendant further represented that he had applied for a patent for his pretended invention in the patent office of the United States, and that his application therefor was still pending and undetermined.

"*Third.* Defendant, intending to wrong, cheat and defraud the plaintiff out of his said stock of goods and property, knowingly, fraudulently and deceitfully represented to plaintiff, that the said pretended invention was such an improvement on such other folding beds in common use, that all said weights used in them for balancing and overcoming the necessary leverage power, (of the bed in letting down and closing up) could and would be dispensed with, by the use of his springs, tracks and rollers, and that said springs, tracks and rollers would completely and fully do and perform all necessary work and supply the place of such weights above named, in counteracting the weight and leverage of the bed and furnishings above named as necessary and usual, while being let down and unfolded for use, and in being folded up when not in use, and that said bed should and would be built of substantially the same kind, quality and dimensions of lumber and materials as used in said other folding beds, and further represented that the 'down pull' of his said springs would equal the 'down pull' of the folding part of said bed when being opened for use, and further represented that his said bed would not, when being so opened, which statement defendant did not know to be true, and in fact was not true, and might with perfect safety have any amount of weight added upon the bed part even to the extent of one thousand pounds and that it would not fall or tip over in use, because, as he falsely and fraudulently stated, that the 'down pull' of his said

springs in the rear would still counteract and overcome the 'down pull' of the bed and weights in the front so it could not fall over.

"These are the representations as alleged by plaintiff which induced him 'to enter into a written contract for the exchange of the plaintiff's said property for the said supposed invention of defendant and his beds, etc. on hand.' The plaintiff further alleges that all the said representations were false, and known by defendant to be false at the time, and defendant in truth and fact well knew at the time:

"*First.* That when said Ringo folding bed should be made of the same size and material of other beds with his springs, rollers and tracks and without weights, that it would not, and could not, operate the ordinary weight of front with any kind of beds and bedding thereon, nor would it operate with as much weight as an ordinary bed must carry necessarily and when so built of the ordinary weight and dimensions, that it would fall and tip over in operation with or without any bed furnishings upon it; and *second*, that it was a dangerous and worthless deadfall and could not safely be used as a bed.

"Fraud is the ground of the action, and the representations as above recited, alleged to have been made before the written contract was entered into, are the means through which plaintiff was induced to make the contract.

"If these representations were made by defendant to plaintiff and were, or any of them, material to the contract afterwards made and were relied on by plaintiff as true, when in fact they were false, then the contract should not stand. But if defendant did not make such representations or any of them,. or notwithstanding defendant made them, the plaintiff relied on his own judgment, or they were not material to the con-

tract or were not false, then the contract should stand. Courts do not undertake to make contracts for parties, they make them for themselves, voluntarily impose their own burdens whether light or heavy to bear, and when freely and fairly assumed courts will leave them to the consequences of their own judgment, whether wisely or foolishly exercised. It is only where fraud, accident or mistake is present that courts can undertake to cancel a contract and that upon the theory that the so-called contract is really no contract at all, the minds of the parties never having freely and fairly met upon the proposition. Fraudulent representations in order to afford a ground for relief, must be of facts which then existed or had existed in distinction from an opinion, a promise or an assumed future fact.

"The first series of representations the plaintiff charges defendant made, it will be observed, consist in a description of the bed, together with an opinion of the defendant as to the value and future popularity of the same, resulting from the substitution of springs for weights. The second, is an allegation, of a pre-existing fact,—that the defendant had applied for a patent for his invention, and that his application was then pending and undetermined—and this, if false, was certainly material and should warrant the cancellation of the contract. The third in the beginning states the opinion (for it can't be anything else) of the defendant that his invention was such an improvement on folding beds as would dispense with the use of weights, and next as to the materials and dimensions of the bed, and then that the 'down pull' of the springs would equal the 'down pull' of the folding part of the bed so that the bed should not tip when being operated.

"This whole controversy really grows out of the alleged falsity of the fact that the 'down pull' of the springs was equal to the 'down pull' of the bed

proper; all other allegations of misrepresentions are minor and hang upon this: if the effect of the springs is to maintain the equilibrium of the bed when in motion, then plaintiff in his own opinion and in that of all of the expert witnesses would have a very valuable invention; but if such is not the effect of the springs, then plaintiff would have a valueless property.

"As said before, the representations, outside of a warranty, upon which the law authorizes a party to rely in the making of a contract, must be of a fact either then existing or pre-existing, and not something to be done in the future, nor a mere opinion of inference as to the effect or result of a certain fact or facts then existing or pre-existing; these facts must be, too, of a concrete character, as distinguished from a truth or principle; here the facts, the springs, rollers, tracks, etc., are known to the plaintiff as well as the defendant, no fact is concealed from him as to the various parts and devices entering into the construction of the bed. The defendant tells him that the result of this combination of things will be that the bed will remain stationary while being operated. Plaintiff could investigate this as well as defendant; no door of knowledge is closed on him; he need not rely upon the mere opinion of defendant as to how the machinery will act, for it is but an opinion at best; but, having all the facts before him, could draw a conclusion from them as well as defendant.

"If he was not satisfied with his own opinion, and voluntarily chose to adopt defendant's as to the effect of these facts, it was his privilege so to do, but he ought not now to complain of it. The law does not relieve one from a contract because he was mistaken in his judgment upon open, patent facts. The very life of trade is freedom of judgment; plaintiff says he was imposed on by the false philosophy of defendant; that

is, that the opinions of defendant as to the effect of the mechanical forces employed were erroneous, and that really is the ground of his complaint. The peculiar medico-religious views of plaintiff, though occupying his thoughts to some extent, did not interfere with his good sense in the general management of his business, and if it be a fact that he was inferior in mental vigor to defendant, that amounts to nothing, as mental inequality is a law of nature and goes the world over. If that were ground for setting aside a contract, none would stand. I think it is quite plain that the contract should not be set aside on account of the alleged fraudulent representations of defendant to plaintiff before the making of the contract.

"It is also alleged by plaintiff that various matters and things were omitted from the contract fraudulently and wrongfully by defendant. Of this there was no evidence whatever—the contract was exactly as both parties desired and intended it should be.

"Although total failure of consideration is not formally pleaded by plaintiff as the cause of action, yet in negativing the truth of defendant's representations he, among other things, alleges that 'the bed was a dangerous and *worthless* deadfall and could not be safely used as a bed.' A total failure of consideration is a good and complete defense to an action outside of the defense of fraud, but mere inadequacy is not. In this case the evidence is conflicting as to the utility of the invention, but the evidence did not establish that it was a 'worthless deadfall' or wholly valueless as a folding bed, and hence this defense is unavailable.

"At the time of the making of the contract, defendant's application for a patent was pending and undetermined; plaintiff then became owner of an undivided half thereof, and whether his legal title came directly from the United States to him or indirectly from the

United States through defendant to him was an imma-
terial matter, the end to be accomplished was the vesting
of the right in him, and this was done in a safe and
more expeditious manner than having the title put in
defendant after his ownership had ceased, and thus
risk something to be done in the future—the formal
assignment—which the death, disability, or refusal of
defendant might delay and prevent, for a time, to the
loss and expense of plaintiff.    Besides, it was the pur-
pose and object of agreement between plaintiff and
defendant to invest plaintiff then and there with one-
half ownership in the invention, and it was the legal
duty of the commissioner to issue the patent to the
owners thereof at the time of issuance.

  "I have treated plaintiff's allegations of fraud as
true in the main, and considered their legal sufficiency,
but when we go to the evidence for the facts occurring
before and at the time of the trade, we do not find that
they substantiate the allegations of plaintiff.    Plaintiff
was, at the time of the trade, conversant with folding
beds—had handled them, of various kinds, for many
years—thoroughly appreciated, in common with others
who were informed, the great value of a bed dispensing
with weights and using springs—advised and suggested
changes and supposed improvements to defendant dur-
ing the working out of the idea—inspected the models
at various times—proposed the trade first himself, and
again a second time, and when defendant tells him he
will trade, plaintiff advises with his friends, gets the
opinion of an expert as to the value of the invention
and throughout the whole negotiation is cautious and
guarded.    At the time of the trade plaintiff knew, or
ought to have known, far more about folding beds than
defendant, who was wholly ignorant of them, prior to
the time he begun work on this invention, and it seems
incredible to me, with all his light and knowledge on

the subject, that he would accept the opinion of the opposite party in interest without question, and found a trade of thousands of dollars upon it. I can't think that he did.

"In conclusion, I don't think either fraud in the contract or want of utility in the invention has been shown. The bill will be dismissed with judgment for defendant for costs."

*S. W. Bickley* and *J. M. Barker* for appellant.

(1) Appellant's mental condition warrants, under the evidence, the rescission of the contract. *Owing's case*, 17 Am. Dec. 311; *Tacks v. King*, 15 Am. Dec. 354; *Heard v. Sack*, 81 Mo. 613; *Tolson v. Garner*, 15 Mo. 494. (2) The court erred in refusing to admit appellant's evidence in rebuttal. *Babcock v. Babcock*, 46 Mo. 247; *Lemon v. Chanslor*, 68 Mo. 354. (3) The relief asked should be awarded because of defendant's misrepresentations. *First.* False statements and statements not known to be true are equally criminal in the eye of the law. *Buford v. Caldwell*, 3 Mo. 478; *McAdam v. Cates*, 24 Mo. 223; *Glasscock v. Minor*, 11 Mo. 655; *Florida v. Morrison*, 44 Mo. App. 529; Bishop on Contracts (1887), sec. 660. *Second.* And the same effect is produced by fraudulent representations concerning some specific fact, which could be ascertained by examination or inquiry, if it is positively uttered and the purchaser relies on it, and consequently forbears to examine or inquire, the transaction becomes voidable for the fraud. Bishop on Contracts (1887), 664–670, and notes; *Holland v. Anderson*, 38 Mo. 55. *Third.* But often a single positive word will carry the case across the line and establish fraud. One party is not even required to answer what the other asks, but if he does, he must speak truly. Bishop on Contracts (1887),

secs. 650–664, and cases cited; *Caldwell v. Henry*, 76 Mo. 254; *Massey v. Young*, 73 Mo. 260–273; *Nauman v. Oberle*, 90 Mo. 666; *Cottrill v. Krum*, ·100 Mo. 397; *Yeater v. Hines*, 24 Mo. App. 619. (4) The contract is executory and voidable. Benjamin on Sales, secs. 80 and 83. (5) The patent issued in this case is not the patent appellant bought. He bought the improvement and not the patent applied for. He was entitled to the particular thing purchased, viz., letters patent on the working model on exhibition at the time of sale. *Halpin v. Manney*, 33 Mo. App. 388; *Eyerman v. Ass'n*, 61 Mo. 489; *Davis v. Brown*, 67 Mo. 314; *Lowe v. Sinklear*, 27 Mo. 310; *Yaates v. Ballentine*, 56 Mo. 537; *Marsh v. Richards*, 29 Mo. 105; *Lee v. Ashbrook*, 14 Mo. 378; *Stottlemeyer v. Babb*, 7 Mo. App. 578; *Curtis v. Stewart*, 12 Mo. App. 590.

*George Robertson* and *W. W. Fry* for respondent.

PER CURIAM (BLACK, C. J., BRACE and BARCLAY, JJ.)—Having heard arguments of counsel and duly considered the points submitted on plaintiff's appeal, we conclude that the judgment delivered by Judge Hughes is in all respects a correct treatment of the facts of this case and of the law applicable thereto. We therefore deem it unnecessary to repeat what was then said; but, approving his judgment, direct that it be affirmed. MACFARLANE, J., did not sit in this cause.