WEIK, Respondent, v. WILLIAMSON-GUNNING ADVERTISING COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1904.

1. **FRAUD: Cancelling Contract: Promissory Statements.** False representations made during negotiations for a contract which show on their face that they are not intended as statements of facts, but as expressions of opinion or expectations as to future occurrences, do not amount to fraud which would authorize a cancellation of a contract.

2. **CONTRACT: Construction.** Where plaintiff and defendant entered into a contract whereby the defendant agreed to employ plaintiff at a salary of $25 per week with a commission of 5 per cent on all business turned in, not to exceed $5,000 from any firm or individual in one order, with a provision that the compensation, including salary and commission should equal the amount of $50 per week and settlement on that basis to be made every three months, the minimum compensation for the plaintiff's services under the contract was $50 per week.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Nathan Frank* and *Richard A. Jones* for appellant.

*Claud D. Hall* for respondent.

STATEMENT.

Plaintiff for cause of action states that on the fifteenth day of September, 1902, he entered into a written contract with the defendant, signed by its president, R. J. Gunning, which contract is in words and figures as follows, to-wit:

"St. Louis, Missouri, September 15th, 1902.
"Mr. O. B. Weik,
"St. Louis, Mo.
"Dear Sir:
"We will make the following arrangement for your services, commencing with this day.
"Your entire time and energy are to be devoted to the interests of our company; you are to act as a solicitor here in the city of St. Louis, or outside, should we deem it necessary to send you to other cities. The period of your employment is to be for the term of six months from and after the date above written.
"We will pay you a salary of $25 per week, payable weekly, and will also pay your necessary incidental expenses which are not to amount to more than $5 in any one week. Your expense account is to be rendered us at the end of each week, carefully itemized, and we are to pass upon the necessity of any particular expenditure. Expenses in excess of that figure will be paid by us if we deem the necessity of same of sufficient importance.
"We will also pay you a commission at the rate of five per cent on all business turned in by you, not to exceed five thousand ($5,000) dollars, from any firm

or individual in one order. Should the total amount of business received from any one firm or individual within that time exceed five thousand ($5,000) dollars, whether or not a commission is to be paid you on same, is entirely optional with Mr. Gunning; it of course is understood' that the commission is figured on the amount of our collections, and not on the face value of the order.

"We also agree to allow you, while travelling in behalf of our interests, transportation and expenses not to exceed $5 per day; expenses in excess of that figure will be allowed by us if we consider the necessity of same of sufficient importance.

"It is understood that the compensation, including salary and commission, shall equal the amount of fifty ($50) dollars per week, settlement on this basis, to be made at the expiration of three (3) months from date hereof.

"You are to at once file a list of the St. Louis concerns with whom you desire to work, which is to be approved by us. Any additions to this list should also be submitted to us and passed on before being included among the firms upon which you are working. Should your efforts on any firm or individual not produce satisfactory results to us within thirty (30) days, we reserve the right to place another solicitor on that firm.

"Of course it is distinctly understood that expenses are to be kept down to the lowest possible limit at all times, and that expense accounts are to be rendered at the end of each week without fail, and expenses are not to be lumped, but minutely itemized and vouchers are to be attached wherever it is possible, so that everything can be audited intelligently in the office.

"You will be expected to report at the office not later than 8:30 in the morning, and if you do not expect to report personally at the office two or three times during the day it will be necessary to call up the office by telephone between 12 and 1:30 p. m.—always report-

ing at the office in person at the end of the day.  If you find this impossible, however, please report by telephone towards evening.  We make this request for the reason that we want you to keep in close touch with the office so that if anything comes up during the day which we desire to turn over to you for attention, we can do so with as little delay as possible.  You will be furnished with daily instructions from the office to which you will give your best attention, and report results at the close of each day.

"Accepted  O. B. Weik.　　　R. J. Gunning, Pres't."

The petition continues as follows:

"The plaintiff says that by the terms of said contract plaintiff, in consideration of the agreements and undertakings therein on the part of the defendant to be done and performed, agreed to render his services to the defendant as an advertising solicitor and solicit advertisements for defendant in the city of St. Louis or outside for a period of six months from date of said contract, and that plaintiff was to receive as his compensation the sum of fifty dollars per week, twenty-five dollars of which was to be paid weekly and the remainder at the end of every three months after the date of said contract, and in addition to said compensation plaintiff was to receive certain expense money and commissions specified in said contract.

"Plaintiff says that immediately after making said contract on the same date he entered upon the performance of his duties under said contract and performed same until November 24, 1902.  Plaintiff says that defendant paid plaintiff one-half of the compensation provided by said contract for the said ten weeks of plaintiff's services, or until November 24, 1902, and that the total amount of compensation received by plaintiff from the defendant under said contract for services rendered was the sum of $250.  Plaintiff says that the defendant is still indebted to plaintiff for one-

half of his compensation for the said ten weeks of services rendered defendant from September 15, 1902, to November 24, 1902, or in the sum of $250, for which sum plaintiff prays judgment.

"And for a further cause of action against the defendant, plaintiff says that on November 24, 1902, the defendant without reason or provocation discharged plaintiff from its services and refused to allow any further performance of his contract; that plaintiff at all times thereafter was ready and willing to perform his undertaking and render his services to the defendant and he frequently tendered his services to the defendant but defendant always refused to accept them. Plaintiff says that on account of defendant refusing to allow plaintiff to perform his contract and on account of defendant's breach of contract as aforesaid, plaintiff has been damaged in the sum of $800, for which further sum plaintiff prays judgment.

"Wherefore plaintiff prays judgment against the defendant in the total sum of $1,050 and for his costs of suit."

The answer, omitting caption, is as follows:

"Defendant for answer to the matters and things set forth in the petition of plaintiff admits that it is and was at all times mentioned therein, a corporation, organized, existing and doing business under and by virtue of the laws of the State of Missouri, and during all of said times conducting a display advertising business by means of billboards and signs placed at conspicuous points in the city of St. Louis, Missouri; denies each and every other allegation in said petition contained not hereinafter specifically admitted.

"Further answering, defendant alleges and charges the fact to be that the plaintiff, in order to induce the defendant to execute the written contract set forth in his petition, fraudulently and with intent to deceive defendant for such purpose, stated and represented that he had a large amount of advertising busi-

ness of the character done by defendant, ready to turn over and which he would turn over to it, and a large number of orders for advertising of such character from East St. Louis merchants; that he had a large amount of business of such character amongst persons who had been placing advertising in street cars of the city of St. Louis, and that a large number of such persons were his customers and that he could and would control such business and turn it over to defendant.

"That the defendant relied upon the statements aforesaid of the plaintiff and believed them to be true, and so relying upon their truth was induced thereby to execute said contract, which, had it been advised of the fact concerning such statements or either of them, as hereinafter stated, it would not have done.

"That the statements and representations of plaintiff aforesaid were untrue in this, viz.:

"The plaintiff did not have a large amount of business ready to turn over to defendant nor any business at all, nor did he procure and turn over to defendant business to any substantial amount; that he did not have a large number of orders of East St. Louis merchants for advertising matter of the character described as done by the defendant, nor of any character, nor did he procure or turn in any orders for any such advertising; that the plaintiff did not have a large amount of advertising or business of any character amongst persons who had been placing advertising in street cars, nor did he have customers amongst such persons, nor did he procure for and turn over to defendant business to any substantial amount; that during the time plaintiff was in the employ of defendant he did not procure or turn in to the defendant business of any substantial amount nor business of a sufficient value to defendant to defray his weekly salary of $25 per week and expenses.

"That by reason of the deceit as aforesaid practiced upon the defendant, the inducing cause which led

to the making of said contract, the same is void and of non-effect.

"Further answering, defendant alleges and charges the fact to be that the plaintiff did not devote his entire time and energy to the interests of defendant as under the terms of said contract he was obliged to do, but to the contrary thereof, was engaged in loaning money upon chattels and other collateral security and obtaining business of such character.

"Wherefore, defendant by reason of the premises aforesaid, says there is no liability under the terms of said contract executed by it, and prays judgment that it go hence without day and recover its costs."

The evidence shows that negotiations between plaintiff and defendant began about September first and continued at intervals until September fifteenth, when the contract set out in the petition was executed. Immediately on the execution of the contract, plaintiff commenced working for defendant and continued in its service for ten weeks, until November twenty-fourth, on which day he was summarily discharged for the reason his services were not satisfactory to the defendant in that he did not secure the amount of advertising defendant expected of him. The whole amount secured by him during the ten weeks he worked was but fourteen hundred dollars, fifty per cent of which consisted of renewed contracts. After his discharge, plaintiff repeatedly offered his services to defendant and requested that he be continued in its employment for the balance of the contract period. His services were not accepted. The evidence also tends to show that plaintiff was unable to secure other employment at his business—soliciting for advertising concerns—until long after the expiration of the term for which he had been employed by defendant.

The evidence of Mr. Gunning, managing officer of defendant, who employed plaintiff, is substantially as follows:

"Plaintiff applied for a position as advertising solicitor, stating that he had considerable business on hand that he could place with us, that he had been with the Western Advertising Company for quite a while (a company engaged in putting advertisements in street cars); that the cars were all full and he could place no more business with them, but that he could divert the business to the bulletin boards; that he had a number of customers here in St. Louis and in East St. Louis that he could place on the boards in that city. I told him I would take it into consideration that if he could procure that amount of business such as he stated we could have an opening for him. I made no inquiries concerning him. I relied upon his statements and upon those statements finally hired him. We had a plant that we had just opened and I was anxious to secure the business and it made quite an impression."

The evidence of the St. Louis manager of defendant's business shows that plaintiff did not procure or bring the defendant company any business from either street car customers or East St. Louis concerns during the entire time he worked for defendant. Plaintiff's evidence shows that he did not turn in any advertising contracts from these people, and he testified that he never agreed nor promised to do so and did not represent to Mr. Gunning that he could or would divert the advertising of any of these people to the bulletin boards; that, as a matter of fact, these people had been customers of his and he communicated this fact to Mr. Gunning and stated to him that he might be able to get them, or some of them, to transfer their advertising to billboards, as the street cars at that time were full, but never represented that he would get them as customers for defendant. For the services plaintiff rendered during the ten weeks, defendant paid him two hundred and fifty dollars, or twenty-five dollars per week, but refused, on demand of plaintiff, to pay the additional twenty-five dollars per week claimed by

plaintiff under the terms of the contract. There was no evidence that plaintiff, while he was working for defendant, was also engaged in the business of loaning money on chattels, as alleged in the answer.

The court gave the following instructions requested by plaintiff:

"1. The court instructs the jury that there is no testimony justifying a finding in favor of defendant on either defense pleaded in defendant's answer, that is, the evidence does not justify a finding for the defendant either on the ground that the plaintiff obtained the contract sued on by false or fraudulent representations as pleaded by defendant, cr on the ground that plaintiff did not devote his entire time and energy to the business of defendant, or that plaintiff was engaged in the loaning of money or procuring loans on chattels and other securities pleaded by defendant.

"2. The jury will therefore find for the plaintiff on the first count of plaintiff's petition in the sum of $250, for the balance of wages due plaintiff for services rendered from September 15, 1902, to November 24, 1902.

"3. And the jury will further find for plaintiff on the second count of plaintiff's petition for breach of contract and wrongful discharge and will assess his damages in the sum of $50 a week, the compensation agreed upon by the parties, from November 24, 1902, to March 15, 1903, or a total sum of $800, deducting any sum, if any, which the jury finds the plaintiff received in any business carried on by him, and also any sum which plaintiff received or might have received by reasonable exertions as wages for similar services during the period from November 24, 1902 to March 15, 1903. But it rests with defendant to show what wages plaintiff received or might have received in a similar line of business, if any, and also what sum, if any, plaintiff earned during that time."

The court gave the following instruction for defendant:

"The fact, if you find it from the evidence to be a fact, that defendant was not justified in refusing to further retain plaintiff in its employ, will not itself warrant a verdict for the amount which he was to receive under the terms of this contract, unless you further find from the evidence that after the discharge of plaintiff by the defendant, he made diligent effort to obtain employment, was unsuccessful in so doing and was so damaged."

The court refused the following instructions requested by defendant:

"1. The jury are instructed that the plaintiff is not entitled to recover anything on the cause of action stated in the first count of his petion, viz: for services claimed to have been rendered from September 15, 1902, to November 24, 1902, and your verdict on such count will therefore be in favor of defendant.

"2. If the jury under the other instructions and the evidence, should find for plaintiff on the second cause of action stated in his petition, you will not allow him greater damage than a sum equal to his salary figured at the rate of $25 per week from the twenty-fourth day of November, 1902, to the fifteenth day of March, 1903, the date at which said contract was in any event to have terminated.

"3. The jury are instructed that if they find from the evidence that plaintiff during the term of his employment under said contract was engaged in the loaning of money on chattels or other collateral security and obtaining business of such character to such extent that he did not during business hours, devote his entire time and energy to the interest of defendant, then your verdict will be in favor of defendant.

"4. The court instructs the jury that if they find and believe from the evidence that the plaintiff, prior to entering into the contract with defendant, and

in order to enduce the defendant to execute the same, represented to it that he had a large amount of advertising business of the character done by defendant, ready to turn over to it, or a large number of orders from East St. Louis merchants, or a large amount of business of such character amongst persons who had been placing advertising in street cars in the city of St. Louis, and that such persons were his customers, and that defendant relied upon such statements or either of them and was so induced to execute the contract in evidence and would not otherwise have executed it, if you further find from the evidence that such statements or either of them were substantially untrue, then your verdict will be in favor of defendant.''

The jury found the issues for plaintiff on both counts of the petition and assessed his damages on the first one at two hundred and fifty dollars and on the second at seven hundred and fifty dollars. In due time, defendant filed its motion for new trial, which was overruled, whereupon it appealed to this court.

BLAND, P. J. (after stating the facts).—1.   Two questions are presented for solution by the record in the case: First, whether or not there is any substantial evidence tending to prove the allegations of fraud set up as a defense in the answer; second, under the terms of the contract, was the plaintiff, irrespective of the amount of business he might bring to the defendant, entitled to a salary of fifty dollars per week or twenty-five dollars per week certain, the fifty dollars per week, mentioned in the contract, being contingent on the amount of business plaintiff might be able to secure for the defendant? In respect to the first question, in explanation of the situation, it is well enough to state that Gunning and plaintiff were strangers to each other, having never met prior to the beginning of negotiations for the contract. Gunning was just starting a branch of the defendant's business in the city of St.

Louis and was anxious to employ an experienced ener-
getic agent to solicit advertising. The plaintiff, from
the evidence, appears to be such an agent, and Gun-
ning stated that he impressed him as being the kind of
man he wanted, and that he formed this opinion mostly
but not entirely from conversations with the plaintiff.
It is also shown by the testimony that plaintiff had
been successful as an agent in soliciting advertising for
other concerns and had recounted his successes to Gun-
ning pending the negotiations for the contract, and
Gunning testified that he depended and relied entirely
on the representations and statements made to him by
the plaintiff and hired him. Gunning nowhere testified
that plaintiff promised or agreed to divert the adver-
tising of his former St. Louis and East St. Louis' cus-
tomers to defendant if he should be employed; what
he said to Gunning, according to Gunning's statements,
was that he could do it, not that he would do it. This
was not a promise. It was nothing more than an ex-
pression of opinion by plaintiff of his ability to divert
this advertising. "Fraudulent representations in order
to afford ground for relief, must be of facts which then
existed or had existed in distinction from an opinion,
a promise or an assumed future fact." Wade v. Ringo,
122 Mo. l. c. 326, 25 S. W. 901; McFarland v. Railway,
125 Mo. 253, 28 S. W. 590. The law recognizes the
well-known fact that men, in the making of bargains
and contracts with other men, "depend upon their own
judgment and opinion instead of those whose self-inter-
est is against them." Chase v. Rusk, 90 Mo. App. l.
c. 29. Representations made during negotiations for
a contract, which show on their face that they were
not intended as statements of facts but as expressions
of opinion or expectations as to future occurrences, do
not amount to proof of fraud. McFarland v. Railway,
supra. Gunning's evidence, under the most favorable
construction, shows that the statements and representa-

tions of plaintiff in respect to procuring St. Louis and East St. Louis parties to transfer their advertising to billboards, was but the expression of expectation of what he thought he would be able to do in the future and did not amount to proof of fraud, and we think the learned trial court did not err in withdrawing the defense of fraud from the consideration of the jury as there was no substantial evidence to support that defense.

2.   The contract contains two clauses in respect to plaintiff's salary.   By the first one defendant agreed to pay plaintiff a weekly salary of twenty-five dollars, payable weekly; by the second it was agreed that the plaintiff's compensation, including salary ($25 per week) and commission, should equal fifty dollars per week, and that a settlement on this basis should be made at the expiration of each three months.   These two clauses are easily reconcilable by referring back to the clause in the contract which provides that defendant will pay plaintiff, in addition to the salary of twenty-five dollars per week, a commission of five per cent on all business turned in by him not to exceed five thousand dollars from any one firm or individual in one order.   It was expected that the commission and salary of twenty-five dollars per week would equal or exceed fifty dollars per week, but if it did not the contract provides that plaintiff's compensation shall not be less than fifty dollars per week and that a settlement on this basis shall be made at the end of each three months.   We think it is clear that the minimum compensation for plaintiff's services under the contract was fifty dollars per week.

Discovering no reversible error in the record, the judgment is affirmed.   All concur.