Kenneth WOLF (Plaintiff) Respondent,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation (Defendant) Appellant.

No. 30907.

St. Louis Court of Appeals.

Missouri.

June 12, 1962.

Don R. Williams, St. Louis, for appellant.

Sullivan & Joyce, by James L. Sullivan, St. Louis, for respondent.

ELGIN T. FULLER, Special Judge.

The defendant appeals from a verdict and judgment in favor of the plaintiff for $2,500. Kenneth Wolf brought his cause of action against the St. Louis Public Service Company for personal injuries, loss of wages, medical expenses and doctor bills allegedly sustained in and arising from an accident which occurred Saturday evening, March 20, 1954, when defendant's streetcar collided with the rear end of plaintiff's automobile. Plaintiff was operating his automobile southwardly on Grand Avenue in the City of St. Louis, and was stopped by reason of traffic at or near the intersection of Grand Avenue with Crittenden Street. Traffic ahead of plaintiff was also stopped in obedience to the traffic light at Arsenal Street which was one block south of Crittenden. Plaintiff's vehicle was located five or six feet behind the car in front. That car was waiting to make a left turn into Crittenden. The plaintiff saw the streetcar approaching from the rear about ten or twelve feet behind plaintiff's automobile. He put his foot on the brake to brake himself and to prevent his car being thrown forward into the car ahead. The streetcar struck and damaged the rear bumper guard but did not damage the bumper itself. The trunk lid was hit about where the latch is on the center of the trunk door. Plaintiff's automobile was thrown forward, but did not strike the automobile in front of plaintiff's automobile because that car had moved forward in making its left turn. Plaintiff was not thrown against any part of his car, but he testified that the impact "jarred me sort of and snapped my neck—just like a whip—forward and back." After getting out of his automobile plaintiff walked to the intersection of Grand and Arsenal and talked with a policeman. He then went back to the streetcar, boarded the streetcar and

talked to the streetcar operator. He then drove his car to St. Anthony's Hospital to visit his brother where plaintiff planned to go when he left his home that evening. While at the hospital he sought no medical attention for himself. After the visit with his brother plaintiff went home, and after arriving home he began to get a severe headache and a pain in his neck. He called his family doctor, Dr. Dihl, a chiropractor, who came to plaintiff's home Saturday night. Plaintiff went to Dr. Dihl's office the following Monday, March 22.

Sometime between Saturday evening and Monday plaintiff called the Public Service Company and reported the accident and at that time someone from defendant company gave plaintiff the names of three or four garages and asked if plaintiff wanted to take his car to one of those garages to have his automobile repaired. One, the General Body and Motor Service, was near plaintiff's place of employment, so he took his car there Monday, March 22. The next day, Tuesday, March 23, he went for his car which had been repaired. The man in charge of the garage asked the plaintiff to sign a release and endorse a check in the amount of $39.07 which the garageman had. Plaintiff told the garageman that he didn't want to sign the release because he still had to see the doctor. Plaintiff testified that the garageman then called the Public Service Company and talked to a gentleman there and then handed the telephone to the plaintiff; that the man identified himself as being with the Public Service Company. Plaintiff then testified, "He told me to go ahead and sign and clear their records and release my car; and the doctor bills would be taken up at a later date." That was all of the conversation. Plaintiff then signed the release and endorsed the check for $39.07 and got his car. The repair bill amounted to $31.07. The balance of eight dollars was given to the plaintiff for the two occasions plaintiff had seen the doctor. This was March 23, 1954. Three years and two months later (May 27, 1957) plaintiff filed suit for injuries and damages allegedly received in this accident. The trial proceeded on plaintiff's second amended petition which was filed September 8, 1959.

The defendant's answer pleads the written release as a bar to plaintiff's action. On May 18, 1960, plaintiff filed his reply admitting that plaintiff signed the release and endorsed the check, but to avoid the effect of the release, plaintiff alleged that such release did not constitute a release of anything other than property damage, and alleged that the conduct of the defendant and its agent constituted "undue duress" and fraud, or, as stated by plaintiff, "constituted a material misrepresentation upon which plaintiff relied, and which thereby voided any alleged agreement, contract or release."

The duress, misrepresentation and fraud relied upon will be discussed in the further course of this opinion. The trial court denied defendant's motion for a directed verdict, and by instructions which hypothesized the facts as developed by the evidence, submitted the question of the validity of the release to the jury. Following the verdict in favor of the plaintiff, defendant filed its motion for judgment in accordance with its motion for a directed verdict, grounded in part upon the plea that the execution of the release barred plaintiff from maintaining the cause of action. This motion was likewise overruled and an appeal was timely perfected.

The principal question is the legal effect of the release signed by the plaintiff, which by its terms fully released the defendant "of and from all claims or demands of every kind or nature whatsoever on account of injuries to person or damage to property arising from accident which occurred on or about March 20, 1954, at or near Grand and Crittenden. The undersigned further declares that he/she has executed this release of his/her own free will and had not relied upon any representations on behalf of St. Louis Public Service Company concerning the nature or extent of his/her injuries and/or damage."

If the release was not procured by duress, misrepresentation or fraud, then it was binding upon the plaintiff, and was a bar to plaintiff's cause of action.

The plaintiff's reply raised the question of duress, misrepresentation and fraud with these allegations and these alone:

"* * * but plaintiff denies that said signing of said document and endorsing of said draft constitutes a release of anything other than the property damage claim * * * and that in fact plaintiff did not agree to accept payment thereunder as settlement in full of the claims described in plaintiff's petition * * * that upon request for his automobile he was informed by said garage attendant or owner that it would be necessary for him to sign the document previously referred to by defendant as Exhibit 'A' in their Amended Answer and further necessary that he endorse the draft previously referred to as Exhibit 'B' * * * that said action on the part of defendant or its agent or both constituted undue duress on the plaintiff, thereby voiding any alleged agreement, contract or release * * *."

And after pleading the fact of the telephone conversation with a gentleman at the Public Service Company, plaintiff then alleged:

"* * * whereupon he did so converse and was told by defendant's agent that he should sign the release so that the garageman could close his records and release the car and that the doctor bills would be taken up at a later date. Plaintiff further states that during said conversation he told defendant's agent that he had not completed his treatment and had no knowledge of when it would be completed.

"Further that said action on the part of said garage on behalf of defendant and upon defendant's agent at defendant's office constituted a material misrepresentation upon which plaintiff relied, and which thereby voids any alleged agreement, contract or release."

The only evidence on this vital question of duress, misrepresentation and fraud is as follows:

"Q. What did he (the garageman) ask you to do?

"A. He asked me to endorse the check and sign the release.

"Q. What did you say?

* * * * * *

"A. I told the man I didn't want to sign the release because I still had to see the doctor.

* * * * * *

"Q. What happened then?

"A. He called the Public Service Company and talked to the gentleman there and turned the phone over to me, and I was instructed to go ahead and sign.

* * * * * *

"Q. What did he tell you? * * *

"A. He told me to go ahead and sign and clear their records and release my car; and the doctor bills would be taken up at a later date. * * *

"Q. Was there any further conversation with the representative from the Public Service Company with respect to the signing of the release?
"A. No.

* * * * * *

"Q. Prior to the conversation with the representative * * * from the Public Service Company was there additional conversation with the representative of the garage or the man from the garage who had * * * this release and check in his possession? Did he tell you anything in addition to what you have already testified to? * * *

"A. No, it was just so he could clear his records and release my car. * * *

"Q. What happened after you got off the phone?

"A. I signed the release and check.
* * *

"Q. You were able to get your automobile after that?

"A. Yes. * * *

"Q. On the first conversation you had with the Public Service Company was there any mention that you would be required to sign the release and the check?

"A. No."

■ We are clearly of the opinion that the evidence falls far short of presenting a case of duress, misrepresentation or fraud. The execution of the release was admitted and plaintiff had the burden of proving the release invalid. Dixon v. Business Men's Assurance Co. of America, 365 Mo. 580, 285 S.W.2d 619; Conley v. Fuhrman, Mo. Sup., 355 S.W.2d 861, 864. The plaintiff was a high school graduate and, at the time of trial, had been employed 13½ years as an installer and switchman for the Southwestern Bell Telephone Company. Plaintiff talked only by telephone to the representative of the Public Service Company and plaintiff, upon being asked what plaintiff was told, testified, "He told me to go ahead and sign and clear their records and release my car; and the doctor bills would be taken up at a later date." Plaintiff knew that he was signing a release. There was no evidence that a confidential relationship existed between the plaintiff and the representative or agent of the Public Service Company with whom plaintiff talked by telephone. After that conversation the plaintiff signed the release, endorsed the check, received his money and drove his car away. The next the defendant ever heard from plaintiff was when the defendant was served with process in this case. There was no evidence offered that the defendant Public Service Company ever refused to "take up the doctor bills at a later date." There was no evidence that the plaintiff ever requested the defendant to consider or pay additional doctor bills. The garage records were cleared and plaintiff's car was released. Therefore, the only justification for the claim of misrepresentation and fraud must be found in the clause, "and the doctor bills would be taken up at a later date."

■ Section 509.070 RSMo 1949, V.A. M.S., provides that a plaintiff may state his original claim against the defendant and also in either the original or amended petition or reply, a claim for having a release or discharge of the original claim set aside as fraudulently or otherwise wrongfully procured. Prior to this Section, originally Section 654 R.S.Mo.1899, a release of a claim or cause of action had to be set aside in an equitable action before proceeding with the suit on such claim. Section 509.070 did not change the substantive law governing the rescission or avoidance of contracts of settlement upon the ground of duress or fraud. It was not the purpose of the Legislature, by the enactment of that section, to change the substantive law or the degree of proof and the rules governing the rescission of contracts of settlements. The purpose of such statute was to avoid a multiplicity of suits, by authorizing the duress or fraud issue to be tried by the jury at the same time and in the same case involving the original cause of action. No court in an equity proceeding, being presented with the evidence offered in this case, would set aside the release.

■■ Under the so-called modern equitable rule a contract obtained by so oppressing a person by threats as to deprive him of the free exercise of his will may be avoided on the ground of duress whether or not the oppression causing incompetence to contract amounts to what was formerly deemed duress at law or merely to the wrongful compulsion remediable in equity. The question in each case is whether or not the victim was so acted on by threats of the person claiming the benefit of the contract as to be bereft of the quality of mind essential to the making of a contract, and

whether or not the contract was thereby obtained. 17 C.J.S. Contracts §§ 173, 174, 175.

In Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 123 S.W. 6, 1. c. 12, the following language, taken from 9 Cyc., page 450, was approved:

> "Duress then, according to this class of cases, includes that condition of mind produced by the wrongful conduct of another, rendering a person incompetent to contract with the exercise of his free will power, whether formerly relievable at law on the ground of duress or in equity on the ground of wrongful compulsion."

■ Duress might be such as to render a settlement void at law. The actual application of force to compel the act of signing a release would constitute an instance. But there is no evidence of duress in this case.

Upon the same evidence plaintiff contends that the release was obtained by misrepresentation and fraud. The defendant claims that the plaintiff made no case for the jury because (1) the statement made by the representative of defendant company, "and the doctor bills would be taken up at a later date," referred to something to be done in the future and could not support an action based on fraud; (2) the plaintiff failed to plead and prove that he tendered back or offered to tender back to the defendant the consideration received for the release; and (3) the court erred in admitting parol evidence to vary the terms of the unambiguous release.

■ It has been the rule in Missouri that representations, though false, which relate to something to be done in the future, cannot be made the basis of a charge of fraud. Sparks v. Rudy Fick, Inc., Mo.App., 309 S.W.2d 687. The rule is that the alleged fraudulent representations must relate to a present or preexisting fact, and that fraud cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Reed v. Cooke, 331 Mo. 507, 55 S.W.2d 275.

In the case of Riss & Company v. Wallace, 239 Mo.App. 979, 195 S.W.2d 881, the defendant was claiming the right to recover on his counterclaim for fraud and deceit on the ground that plaintiff had promised to deliver the certificates of title to certain vehicles and that plaintiff had failed to do so. There was evidence in support of that and to the further effect that plaintiff, at the time such promises were made, had no intention to thereafter deliver the certificates. The opinion then states: "Actions based on fraudulent representations must be predicated on misrepresentations as to material *existing* facts. It is not sufficient that the promisor, when making the promise, had no intention of fulfilling it, if the promise was as to an act to be performed in the future." (195 S.W.2d 1. c. 886.)

In Reed v. Cooke, supra, our Supreme Court held that fraudulent representations must relate to present or preexisting facts to be actionable, and fraud cannot ordinarily be predicated on unfulfilled promises or statements as to future events. And that fraud cannot be predicated on mere promise, though accompanied by a present intention not to perform it. After recognizing that there are exceptions to the rule just stated, the opinion 55 S.W.2d at page 278 states: "It will be observed that in this case the material statements ascribed to defendants, upon which plaintiff says he relied, and which are alleged to have induced him to buy the stock, relate to something to be done and performed by defendants in the future, and are wholly promissory." Continuing the opinion states:

> "One limitation of the general rule, adopted in many jurisdictions, and which has been denominated by textwriters as the majority rule, is 'that fraud may be predicated on a promise accompanied by a present intention not to perform it and made for the purpose of deceiving the promisee and inducing him to act where otherwise he would

not have done so and by virtue of which the promisor has procured either real or personal property from the person to whom the promise is made.' (Citing 12 R.C.L. p. 361.) It is quite clear that plaintiff has attempted to bring himself within this rule * * *. But the rule in this state is 'that fraud cannot be predicated upon a mere promise even though accompanied by a present intention not to perform it on the ground that even under such circumstances the promise is not a misrepresentation of an existing fact.' * * * ' * * * A promise though made without intention to fulfill, is not a misrepresentation of an existing fact. Wade v. Ringo, 122 Mo. 322, 25 S.W. 901; Estes v. Desnoyers Shoe Co., 155 Mo. 577, 56 S.W. 316.' The rule as thus announced seems to have been adhered to by our courts." (55 S.W.2d l. c. 278.)

This court in Missouri Loan & Investment Co. v. Federal Trust Company, 175 Mo.App. 646, 651–652, 158 S.W. 111, 113, said, " * * * a representation, to amount to fraud, must assert a fact or facts as existing and cannot relate to the future. If it does, it is not fraud, whatever may be the intention of the party or the effect of his statement."

Our Supreme Court in Grand Lodge of the United Brothers of Friendship v. Massachusetts Bonding and Insurance Co., 324 Mo. 938, 25 S.W.2d 783, 788, stated: "Another well-settled rule is that false representations, in order to constitute actionable fraud, must relate to past or existing facts. Representations, although false, which relate to something to be done in the future, cannot be made the basis of a charge of fraud."

There are exceptions to the above rule. In the case of Thieman v. Thieman, Mo., 218 S.W.2d 580, l. c. 585, the Supreme Court, in discussing this rule, stated: "The difficulty of the rule lies in its application and the determination of just what are statements of fact rather than expressions of opinion." In that case the defendant husband had proposed to his wife that if she would sell her equity in her city property he would sell his equity in his farm and with the joint proceeds they would purchase other city property and take title in their joint names. His wife, relying on defendant's good faith, sold her property and deposited the proceeds in their joint names. The defendant prevailed on his wife to purchase the city property and her money was used as a down payment and title taken by the entirety. Defendant then refused to sell his farm or to contribute anything to the purchase of the new property. The husband claimed that his promise to sell his farm was merely a promise to do something in the future and was not an actionable fraudulent representation. The court cited Collins v. Lindsay, Mo.Sup., 25 S.W.2d 84, and the language in that opinion on page 90, is as follows: "In this situation it was represented to her that her father *intended* to default in his payments for the purpose of bringing about foreclosure and sale, and moreover that her interest was in no event worth more than the price offered, $500. This, we think, was more than a mere expression of opinion or statement of something that would occur in the future. The statement that her father intended to default in his payments and bring about a sale meant, and was understood by plaintiff to mean, that he then had that intention; that such was then his state of mind, his present design and purpose."

A state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact. Where representations do not relate so much to a future event as to existing facts, conditions or arrangements on which an expectation of that event may be founded they are not to be regarded as merely promissory. Metropolitan Paving Co. v. Brown-Crummer Investment Co., 309 Mo. 638, 274 S.W. 815, 823.

In Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572, l. c. 574, the Supreme Court,

quoting from Teare v. Sussman, 120 Colo. 488, 210 P.2d 446, 447, said: "Where a present intention, even though as to future conduct, is predicated upon or evidenced by false statements as to existing facts, such statements, if relied on, constitute actionable fraud."

Another exception to the rule that representations, although false, which relate to something happening in the future cannot be made the basis for a charge of fraud, is found in Stallings v. Bone, Mo.App., 327 S.W.2d 513.

Assuming, but without deciding, that the statement, "the doctor bills would be taken up at a later date" is such a statement as to come within an exception to the rule discussed above, still this would not aid plaintiff in this case, for plaintiff failed to prove or to offer any proof that such statement was made with a preconceived intention not to perform it. There is no misrepresentation or fraud inherent in the statement that the doctor bills would be taken up at a later date. Only would such statement be a misrepresentation or fraudulent if it were made by one who, at the time of utterance, had no intention to do the thing stated. There was no evidence that the defendant Public Service Company ever refused to "take up the doctor bills at a later date."

This is not a suit for breach of contract or agreement to pay doctor bills. Plaintiff chose to bring his suit for personal injuries, loss of wages, medical expenses and doctor bills and to ignore the release which he had executed. The release could be avoided had duress or fraud been proven by the plaintiff. No such issue was made for the jury.

For another reason plaintiff failed to make a case for the jury. He did not plead or prove that he had returned or tendered back or offered to return the consideration he had received for the release. It is a well established principle in Missouri law that there are two categories of fraud and that the legal results of the fraud in some ways differ, depending upon the category to which it belongs. The two classes are (1) fraud in the inducement and (2) fraud in the procurement. Fraud in the procurement is sometimes called fraud in the factum. Both kinds of fraud consist in a misrepresentation intentionally or recklessly made by the fraud-feasor which has been relied upon by the victim and which has caused the victim to do an act which he would not otherwise have done. This representation may consist in telling the victim that the act which he is doing is of a different nature than what it really is. Or the misrepresentation may consist in telling the victim that certain collateral facts exist which make him want to do the act which he has done. In the latter instance the victim is under no misapprehension about what he is doing. He fully intends to act just as he did act. In the case of collateral fraud or fraud in the inducement there is a contract. But the defrauded one is given a power to set aside the contract or release. The contract is therefore voidable and not void. In cases of fraud in the factum the fraud-feasor intends one thing and the victim intends another thing. There is no contract and the transaction is void. This distinction was clearly stated by Judge Ragland in Rau v. Robertson, Mo. Sup., 260 S.W. 751. The cases hold that no tender of the consideration received is required where the misrepresentation constituting the fraud is as to the nature of the jural act to be performed. But that it is necessary for the defrauded party to return or offer to return or tender back the consideration received where the fraud relates to collateral matters or where there is fraud in the treaty. Our Supreme Court had this matter of returning the consideration in a release case in State ex rel. Order of United Commercial Travelers of America v. Shain et al., 339 Mo. 903, 98 S.W.2d 597. Judge Westhues, at page 602, stated:

"In the case of McCoy v. James T. McMahon Const. Co., [Mo.Sup.] 216 S.W. 770, loc. cit. 771, 772(1–5) (6), this court had this question before it.

The rule was so well stated in that case that a quotation therefrom will be sufficient. Division one of this court said:

" 'Counsel contend this discloses the release was signed "under threats and coercion," and "is absolutely void, and gives the defendant no rights whatever before suit brought or afterward."

" '(a) * * * Ordinarily duress renders a contract voidable, not void, and the same duty arises to put the other party in statu quo before avoiding the contract as exists in cases of fraud in the treaty. Wood v. [Kansas City Home] Telephone Co., 223 Mo. [537], loc. cit. 563, 564, 123 S.W. 6; Bushnell v. Loomis, 234 Mo. [371], loc. cit. 381, 382, 137 S.W. 257, 36 L.R.A.(N.S.) 1029. * * *

" '(b) Upon the same evidence appellant contends the release was fraudulently procured, and therefore no tender was necessary. Before the rule requiring tender before suit becomes applicable there must be a release. If the instrument or agreement relied upon never existed in fact or is void at law, no tender can be required. Fraud in the factum renders the contract void, and no tender is necessary. Fraud in the treaty renders it merely voidable, and, absent some other ground dispensing with the rule, tender is prerequisite to an action on the original cause. Malkmus v. [St. Louis Portland] Cement Co., 150 Mo.App. [446], loc. cit. 453, 454, 131 S.W. 148; Putnam v. Boyer, 173 Mo.App. loc. cit. [394], 398, · 158 S.W. 861 et seq.; Althoff v. [St. Louis] Transit Co., 204 Mo. [166], loc. cit. 170, 102 S.W. 642; Och v. [Missouri K. & T.] Ry. [Co.], 130 Mo. [27], loc. cit. 46 et seq., loc. cit. 69, 31 S.W. 962, 36 L.R.A. 442 et seq.; Wessel v. William Waltke & Co., 196 Mo.App. [582], loc. cit. 592, 190 S.W. 628 et seq.; Reid v. [St. Louis & S. F.] R. R. [Mo.Sup.] 187 S.W. [15], loc. cit.

17. The testimony appellant relies upon has no tendency to prove the release was signed in ignorance of its contents, fraudulently induced by respondent.' "

The opinion then held that the opinion of the Kansas City Court of Appeals, in holding that the plaintiff was not required to tender back the consideration obtained for the release, was in conflict with the controlling decisions of the Supreme Court, and the Kansas City Court of Appeals' opinion was quashed.

In Watson v. Bugg, 365 Mo. 191, 280 S.W.2d 67, 69, 53 A.L.R.2d 743, the court said:

"As to the rescission of contracts of settlement or release on the ground of fraud, and the essentiality of a tender—in this State there is a distinction between fraud in the factum or the execution and fraud in the treaty or the inducement as to the requirement of restoration or tender of restoration of the consideration for a release. Fraud in the factum renders the contract void, and no tender is necessary. Fraud in the treaty (as was alleged in the amended petition in this case) renders it merely voidable, and absent some other ground dispensing with the rule, tender is a prerequisite or condition precedent to the avoidance of the release and to the maintenance of an action on the original claim or cause of action. (Citing cases.) The instant action upon an unliquidated claim for damages was not within an exception to the rule of essentiality of a tender."

This court, in Thomas v. American Automobile Underwriters' Agency, Mo.App., 5 S.W.2d 660, 1. c. 661, said:

"It is the general rule, applicable to all contracts, with the possible exception of insurance contracts, that a party seeking the avoidance of his contract ab initio, either at law or in equity, must tender the return of what he has

received under it, even though the avoidance is sought on the ground of fraud. The rule is not founded on any solicitude for the fraud-feasor, but on the iniquity of allowing a party to repudiate his contract while holding onto the benefits received under it."

In discussing this question in 1869, Judge Bliss of our Supreme Court clearly stated the rule in Jarret v. Morton, 44 Mo. 275, 277:

"But the plaintiff finds the note less than he expected, and complains that he was deceived. And what does he do? Does he at once, upon discovery of the deception, look up the defendant, and repudiate the settlement? Not at all. But he holds on to the price of the settlement, collects the note, pockets its proceeds, and still treats the claim as never having been adjusted. This the law will never permit. If the plaintiff would repudiate the settlement, he must put the other party in the same condition he was before it was made. He cannot appropriate its benefit and deny its obligation. There never was but one doctrine upon this subject; and the books are full of decisions that if a party would rescind a contract for fraud or other cause, he must, so far as in his power, put the other party in the condition he would have been in had the contract not been made. Before commencing proceedings on his

original claim, the plaintiff should have tendered back the note he received of defendant—should have repudiated the settlement—and then he would have been at liberty to impeach it, if set up against his claim."

The defendant claims error on the part of the trial court in admitting parol evidence to vary the terms of the unambiguous release. It is not necessary for us to decide that question. However, since plaintiff in his reply had pleaded duress, misrepresentation and fraud to avoid the release, the trial court cannot be charged with error in admitting parol evidence concerning the release, for mistake, fraud and surprise furnish exceptions to the parol evidence rule, and in such cases parol evidence is admissible. Parol evidence may, in a proper mode and in proper limits, be admitted to vary written instruments, upon the grounds of mistake or fraud. Employers' Indemnity Corporation v. Garrett, 327 Mo. 874, 38 S.W.2d 1049.

No case of duress, misrepresentation or fraud having been made, the defendant's motion for a directed verdict should have been sustained. The judgment is reversed and the cause remanded with directions to the trial court to enter a judgment for the defendant St. Louis Public Service Company.

ANDERSON, P. J., and WOLFE, J., concur.