Harvey A. SPARKS, Respondent,

v.

RUDY FICK, Inc., Appellant.

No. 22638.

Kansas City Court of Appeals.

Missouri.

Jan. 6, 1958.

Robert G. Oberlander, Kuraner, Freeman, Kuraner & Oberlander, Walter A. Raymond, Kansas City, for appellant.

Donald L. Mason, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff Sparks sued defendant, who was engaged in merchandising automobiles, for actual and punitive damages growing out of the purchase by plaintiff from defendant of a 1955 Ford passenger automobile. Plaintiff had a verdict and judgment for actual damages in the amount of $230, and for punitive damages in the amount of $3,500. Defendant appeals.

Defendant offered no evidence, so the facts developed herein are not in dispute.

On Saturday, December 18, 1954, plaintiff was the owner of a 1954 Ford automobile which had been damaged in a collision. He testified to the effect that his insurance company required that he obtain two estimates of the cost of repairs; that he had obtained one such estimate and drove the automobile into defendant's place of business for the purpose of obtaining a second estimate; that he was followed by a friend, Mr. Rall, in another car; that he contacted a mechanic about the business in hand; that another of defendant's employees appeared and asked if plaintiff would be interested in trading for a new car; that plaintiff indicated such an interest and, shortly thereafter defendant's salesman, Erickson, appeared and suggested that plaintiff inspect the automobiles on the floor; that plaintiff and Rall, accompanied by Erickson, proceeded to inspect various models of automobiles; that plaintiff asked Erickson what difference defendant would require to be paid between plaintiff's automobile and a certain 1955 Fairlane sedan; that Erickson said the difference would be from $900 to $950; that plaintiff replied that defendant would have to do a lot better; that Erickson left plaintiff and Rall and, after about ten minutes, returned and said the trade could be made for $782 difference if plaintiff would pay the $50 which was to be deducted by the insurance company from the total cost of repair to his vehi-

cle; that plaintiff stated that he would pay $782 difference between the two cars but would not pay the $50; that Erickson again left, later returned and stated that defendant would accept plaintiff's offer; that, thereafter, it was agreed that a rear seat speaker should be installed at an additional cost to plaintiff of $12, making a total cash difference to be paid by plaintiff in the amount of $794. Plaintiff stated that at no time was any price for his 1954 automobile discussed, that is, "trade-in" value, nor was the price of the car discussed; that plaintiff was primarily interested in the amount of cash difference he would be required to pay.

He further testified to the effect that he was to pay off the encumbrance against the old car and deliver the insurance check, for repairs to defendant; that he believed, and so told Erickson, that the cash balance due on the 1954 car was about $750, but that it was, in fact, $767.07; that Rall was present throughout the various conversations and discussions between plaintiff and Erickson; that, after arriving at an agreed difference of $794, all the parties sat down at a small table where Erickson proceeded to fill out a "buyers agreement," which was in evidence; that plaintiff could and did see Erickson write the following words and figures in said instrument to-wit:

"Date 12–18–1954
Model No. Fairlane 4 Dr.

| | |
|---|---:|
| | $2290.00 |
| Fordomatic | 195.00 |
| Radio | 90.00 |
| Heater | 72.00 |
| E Clock | 15.00 |
| Turn indicator | 20.00 |
| W. Washer | 10.00 |
| RS Speaker | 12.50 |
| Total cash selling price | $2704.50 |
| Less balance owing to Robidoux, St. Joe Finance $750 | |
| Furnish own insurance. | |
| Cash deposit with order | $10.00" |

The instrument is before us and the handwriting above-mentioned appears to have been made by the same person, by Mr. Erickson, according to the testimony of plaintiff and Rall. But the remainder of the blanks in the form are filled in by different handwriting, different types and colors of pencil and pen and, apparently, by different persons. Furthermore, it is in various colors, rubbed out, defaced, written over and, in truth, indecipherable and meaningless. It is signed by plaintiff and by Mr. Erickson.

Nowhere on the form does the figure $794 or $994 appear. Mr. Rall's testimony fully corroborated that of plaintiff. He said that he heard the above conversation and witnessed Erickson write in the items above-mentioned; that plaintiff signed same at Erickson's request; that Erickson requested that plaintiff sign a note and mortgage form, in blank, stating that it would be filled out later in accordance with the above agreement; and that plaintiff did so.

Plaintiff stated that he, at the time, signed a blank mortgage and note form, also a blank relating to procuring his own insurance; that he paid Erickson $10 in cash; that he later picked up and delivered to defendant the insurance check; that he went into defendant's place on Monday to furnish another reference, but did not see Erickson; that he went in on Wednesday to get the car but did not see Erickson; that, on Thursday, plaintiff went in to get his car and saw and talked with Mr. Flaherty; that Flaherty told him that defendant had traded short and urged plaintiff to pay another $50; that he refused, telling Flaherty that he had agreed to pay $794 difference and would pay no more; that Flaherty finally gave him the keys to the new car and told him to go ahead; that he did not see Erickson.

Plaintiff stated that, about a month later, he had a notice from the finance company that he owed $2,014.20 on the car; that he thought that was about $200 more than he had agreed to pay, including finance charg-

es; that he went to defendant's place of business and attempted to remonstrate, to no avail; that he was advised by counsel that he would have to pay the finance company, regardless of whether the amount was correct; that he paid the note in full and then instituted this suit.

A "Car Invoice" was introduced in evidence showing the sale price of the 1955 car at $2,704.50; cost of financing $262.63; total time price $2,967.13; deposit $10; cash on delivery $250, trade-in allowance $1,460, less $767.07, leaving $692.93; net time differential $2,014.20; total settlement $2,-967.13. Plaintiff had not signed this instrument and stated that he did not receive a copy of it.

An instrument denominated "Purchase money chattel mortgage" was in evidence signed by plaintiff. It was dated December 22, 1954 which is four days after plaintiff said he had signed it. At the top thereof is "Record of Transaction," wherein the following appears:

| "Delivered price | | $2704.50 |
|---|---|---|
| Down payment: Cash | $260.00 | |
| Trade In | 1460.00 | |
| Amount Owing on Trade in | 767.07 | |
| Purchaser's Equity in Trade in | $692.93 | |
| Total down payment | | 952.93 |
| Unpaid Balance | | $1751.57 |
| Finance Charges | | 263.00 |
| Purchaser's Obligation | | $2014.20" |

■ Plaintiff's testimony was that there was no discussion, at any time, as to the "trade in" value of the 1954 car; that he and Erickson discussed only the difference plaintiff would owe, which was $794. Since plaintiff owed a balance on the 1954 car of $767.07, which he was to pay, and was to pay in addition, $794, it is evident that the unpaid cash balance he would have owed was the sum of $1,561.07, of which $10 was paid to Erickson. Therefore, under all of the evidence in the case the correct amount of "unpaid balance" mentioned in the "Record of Transaction" should actually have been the sum of $1,551.07, instead of $1,751.57, as stated therein. Under all of the evidence plaintiff was charged $200 more for the car than was agreed on.

The evidence was that he paid about $30 interest on this excess charge. The judgment for $230 for actual damages, was approximately correct.

■■ Defendant contends that no case was made in fraud. It being a corporation, defendant could only speak and act through its agents and servants; it could not be guilty of fraud unless one or more of its agents were guilty. Blasinay v. Albert Wenzlick Real Estate Company, 235 Mo. App. 526, 138 S.W.2d 721, 725. In this case plaintiff dealt with but one man in making the contract out of which this action grows. The decision herein must depend on what Erickson said or did on December 18, 1954. No other agent of defendant talked or dealt with plaintiff prior to plaintiff's signing of the buyer's agreement, after which Erickson immediately left for a few minutes. When he returned he said the deal was cinched, it was all right. Thereupon, at Erickson's request, plaintiff made a $10 cash deposit and signed the chattel mortgage and note without filling out the blanks. He signed same because Erickson told him that they would fill it in later in accordance with their agreement. Plaintiff then left defendant's place of business and did not again see Erickson.

"Fraud is never to be presumed. It must be proved by clear and convincing evidence and the burden of proof is upon the person asserting it * * *.

"There must be proof that a false statement of a material fact was made by defendant; that he knew at the time of making it that it was false or made it with a reckless disregard of its truth or falsity; that the party to whom it was made relied

on the false representations; that his reliance thereon was an act of ordinary prudence and, that, relying on the false statement, he was induced to act to his damage." Kelley v. Absher, Mo.App., 210 S.W.2d 531, 535. The difficulty of proving fraud will not excuse failure of proof.

■ Proof of each of the elements of fraud, a representation, its falsity, scienter, deception, and injury is essential to a submissible case. Failure to prove any one of them is fatal to a recovery. Maupin v. Provident Life & Accident Insurance Company, Mo.App., 75 S.W.2d 593, 596, Lammers v. Greulich, Mo., 262 S.W.2d 861, 864.

■■ Defendant contends that plaintiff relied on a promise to be performed in future. The rule is that representations, although false, which relate to something to be done in the future, cannot be made the basis of a charge of fraud. Grand Lodge of United Brothers of Friendship, etc. v. Massachusetts Bonding and Insurance Company, 324 Mo. 938, 25 S.W.2d 783, 788. However, it is also the rule that: "A state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact. * * * An existing opinion may be a fact material to the proposed transaction and a statement that such opinion exists becomes an affirmation of a material fact and if untrue it is a misrepresentation." Thieman v. Thieman, Mo., 218 S.W.2d 580, 585.

■ Plaintiff urges that this case falls within that rule. He did not so plead nor has he offered any evidence from which it could be determined that Erickson knew or believed that his statement as to the future completion of the chattel and note forms in accordance with the contract would not be done. The evidence fails to show that Erickson made such statement in bad faith. He did not say that he, himself, would complete the form. The evidence tends to show that he did not complete said forms. At least there is no direct or circumstantial evidence to the ef-

fect that he did so, or that he ever said that he would. Fraud is seldom susceptible of proof by direct evidence but may be shown by circumstances. However, facts and circumstances which lead only to suspicion of fraud or are as consistent with honesty and good faith as with fraud are insufficient to make a case. Duvall v. Stokes, Mo.App., 270 S.W.2d 419, 423.

■ There is a complete absence of proof of facts or circumstances from which it may be found that Erickson had knowledge, at the time he made the statement, that it was false, or that the chattel and note would not be filled out according to the contract. Absent proof of Erickson's guilty knowledge, scienter, defendant cannot be held to punitive damages. There is no evidence tending to prove that any one of defendant's agents knowingly filled out the chattel and note for $200 more than was agreed on as to the cash difference to be paid. Absent such proof, or circumstances from which it could be inferred, there is no proof of malice. It is not shown who filled out the instruments, or from what source the figures came, or whether it was an innocent or an intentional mistake.

"The jury was authorized to find for plaintiff on any theory warranted by the evidence, and to assess actual damages at the difference between the actual and represented value. That would be true whether or not they found the misrepresentations were intentional, willful, and malicious. Punitive damages can be awarded in cases of this character where the representations were characterized by malice." Luikart v. Miller, Mo., 48 S.W.2d 867, 871.

The judgment should be reversed and the cause remanded with directions that that part of the judgment for punitive damages, in the amount of $3,500 be vacated.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The

judgment is reversed and the cause remanded with directions that that part of the judgment for punitive damages, in the amount of $3,500, be vacated.

All concur.