Douglas STALLINGS and Onita Stallings (Plaintiffs), Respondents,

v.

Arthur C. BONE and Alberta Bone (Defendants), Appellants.

No. 30257.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1959.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellants.

Edward L. Downs, Cape Girardeau, for respondents.

RUDDY, Judge.

Plaintiffs in their petition charge the defendants with fraud. From a verdict and judgment in the sum of $3,500 against the defendants they appeal.

The defendants complain that the trial court erred (1) in giving and reading to the jury an instruction which authorized a verdict against defendants if the jury found that the defendants made false representations which related to something to be done in the future, and (2) in allowing plaintiffs' counsel in his closing argument to the jury to draw unfavorable inferences and make unfavorable comment on the failure of the defendants to call Mr. Redwine as a witness.

One of the plaintiffs, Douglas Stallings, was a salesman for a wholesale liquor company. In the course of his duties as a liquor salesman he called on Arthur C. Bone, one of the defendants, who operated a retail liquor store at 425 East Pine Street in Poplar Bluff, Missouri.

The plaintiffs are husband and wife and sometime in the month of December 1955 they learned the retail liquor store was for sale and entered into negotiations for the purchase of the store from the defendants, Arthur C. Bone and Alberta Bone, who are husband and wife. The evidence shows that the defendants represented to the plaintiffs they owned the merchandise and had a lease on the premises occupied by the liquor store. Plaintiffs testified that defendants told them they had a lease on the premises and were in a position to sublease the premises to the plaintiffs. Plaintiffs further testified that Arthur C. Bone told them he "was in the process of buying the property."

Plaintiffs entered into an agreement to purchase the merchandise and the lease for a total price of $16,300. Plaintiffs testified that $11,000 of the purchase price was for the merchandise and $5,300 was for the lease. A contract introduced in evidence provided that the defendants agreed "to sell all of the stock and merchandise in the liquor store referred to in a lease heretofore entered into between the parties hereto and which is located at 425 East

Pine Street, Poplar Bluff, Missouri" and further provided that the plaintiffs agreed "to purchase said stock and merchandise." This contract was signed by the plaintiffs and defendants and was dated January 1, 1956. Also, introduced in evidence was a "Bill of Sale" dated January 1, 1956, executed by Arthur C. Bone, which provided in part as follows: "For the sum of $16,-300.00 I transfer all merchandise and lease on building, located at 425 East Pine, Poplar Bluff, Mo., to Douglas and Onita Stallings."

On the same day the aforesaid contract and bill of sale were executed an alleged lease was entered into between the plaintiffs and the defendants, wherein the defendants as Lessors leased and demised to the plaintiffs "A certain store room known and designated as 425 East Pine Street * * * Poplar Bluff, Missouri.

"To Have and to Hold the same unto the Lessees for a term of five (5) years from the 1st day of January, 1956, down to, through and including the 1st day of January, 1961; Lessees shall have the option of renewal of this lease for a like period of five (5) years under the same terms and conditions." The rental provided in said lease was $100 per month during the term of the lease or any renewal thereof. The lease was prepared by the attorney for the defendants.

Plaintiffs testified they had no doubt defendants had the right to sub-lease the premises and relied on defendants' representations that they had a lease and were in the process of buying the property from the owner. The license to operate the liquor store at the time it was purchased by the plaintiffs was in the name of Arthur C. Bone.

Plaintiffs operated the liquor store from January 1 to December 1956, thinking they had a valid lease to the premises occupied by the store. In December they learned that the defendants did not have a lease on the premises when they sold the store and

the sub-lease executed by the defendants to plaintiffs was worthless.

The evidence shows that at the time defendants sold the liquor store it was owned by John P. Redwine and that defendant Arthur C. Bone was operating the liquor store for him. Arthur C. Bone testified that John P. Redwine asked him to operate the liquor store until it could be sold. He said the license to the liquor store was in his (Bone's) name. He further testified that a lease was prepared wherein John P. Redwine was to lease certain described premises to the defendants. The premises described included those occupied by the liquor store. The defendants introduced in evidence an instrument purporting to be the aforesaid lease. This instrument was signed by the defendants but had never been signed by John P. Redwine, the Lessor. Arthur C. Bone said, "I acted as Mr. Redwine's agent in leasing this building to Mr. Stallings * * *." He said he signed the lease with plaintiffs at the direction of Mr. Redwine.

Arthur C. Bone further testified that plaintiffs knew he was operating the store for Mr. Redwine and knew that the lease had not been signed by Mr. Redwine, explaining that Mr. Stallings said he had to have the lease in order to obtain a license to operate the liquor store. He also testified that Mr. Stallings, prior to entering into the sale and lease agreements, had talked to Mr. Redwine over the telephone about the unexecuted lease. All of these matters testified to by Arthur C. Bone were denied by the plaintiffs. They testified they did not know Arthur C. Bone was acting as agent for John P. Redwine and Douglas Stallings testified he had no conversation with John P. Redwine prior to executing the sale and lease agreements.

The record contains much more evidence concerning the negotiations to purchase the liquor store; the circumstances surrounding the preparation of the lease between plaintiffs and defendants, and the manner in which the store rentals were paid. We

think the facts, we have related are sufficient for a ruling on the two points relied on by the defendants.

■ Plaintiffs' instruction No. P–1, among other required findings, contains the following:

"* * * and if you further find that the defendants, Arthur C. Bone and Alberta Bone, represented to the plaintiffs, Douglas Stallings and Onita Stallings, that they the said Arthur C. Bone and Alberta Bone were in the process of buying the said property from the legal owners * * * and if you further find the defendants well knew that their statements and representations concerning their ownership of said lease and their representations of their intention to buy the said property from the legal owners were untrue, if you so find, * * *."

■ In the first point relied on by the defendants it is their contention that the representations made by them that they were negotiating for and intending to purchase the property were representations relating to the future and thus could not be the basis for a charge of fraud. It has been the rule in this state that representations, though false, which relate to something to be done in the future, cannot be made the basis of a charge of fraud. Sparks v. Rudy Fick, Inc., Mo.App., 309 S.W.2d 687.

The rule is that the alleged fraudulent representations must relate to a present or preexisting fact, and that fraud cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Reed v. Cooke, 331 Mo. 507, 55 S.W.2d 275. In this connection defendants point to that part of the instruction which requires the jury to find that the defendants represented to the plaintiffs they "were in the process of buying the said property from the legal owners." Defendants contend this was merely a promise that the defendants would purchase the property sometime in the fu-ture and thus assure possession to the plaintiffs. Defendants claim this was merely a promise to buy the land that was leased and nothing more. They assert that this was merely a promise to do some future act, namely, complete the negotiations and purchase the property. There isn't any doubt that if the promise is to do something in the indefinite future, an action for fraud will not lie. However, there are exceptions to the aforesaid rule.

It is stated in Sparks v. Rudy Fick, Inc., supra (309 S.W.2d loc. cit. 691) as follows:

"'A state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact. * * * An existing opinion may be a fact material to the proposed transaction and a statement that such opinion exists becomes an affirmation of a material fact and if untrue it is a misrepresentation.' Thieman v. Thieman, Mo., 218 S.W.2d 580, 585."

In Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572, loc. cit. 574, the Supreme Court, quoting from Teare v. Sussman, 120 Colo. 488, 210 P.2d 446, 447, said:

"'As to the second objection, the representations alleged', said the court, 'were not merely as to future intentions, but were false statements as to existing facts. Where a present intention, even though as to future conduct, is predicated upon or evidenced by false statements as to existing facts, such statements, if relied on, constitute actionable fraud.' This is the rule in Missouri."

Again, in the case of Collins v. Lindsay, Mo., 25 S.W.2d 84, loc. cit. 90, the Supreme Court, quoting from Metropolitan Paving Co. v. Brown-Crummer Investment Co., 309 Mo. 638, 274 S.W. 815, said:

"'Where representations do not relate so much to a future event as to existing facts, conditions or arrangements on which an expectation of that

event may be founded they are not to be regarded as merely promissory.'"

In the Collins case it was represented to the plaintiff that her father "intended" to permit and cause the interest on a $5,000 encumbrance when it became due to become delinquent and to bring about a sale of the land in which plaintiff and plaintiff's father had an interest whereby plaintiff's interest would be lost to her. The court said: (25 S.W.2d loc. cit. 90)

"In this situation it was represented to her that her father *intended* to default in his payments for the purpose of bringing about foreclosure and sale, and moreover that her interest was in no event worth more than the price offered, $500. This we think, was more than a mere expression of opinion or statement of something that would occur in the future. The statement that her father intended to default in his payments and bring about a sale meant, and was understood by plaintiff to mean, that he then had that intention; that such was then his state of mind, his present design and purpose."

The court then said: (25 S.W.2d loc. cit. 90)

"A state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact."

We think that the statement of the defendant Arthur C. Bone that he "was in the process of buying the property" was a statement that he then had that intention, that is, to buy the property and there existed at that time negotiations and arrangements for buying the property. This representation comes within the exception to the general rule that representations, although false, which relate to something happening in the future cannot be made the basis of a charge of fraud. The representation made was one indicating a present intention to buy the property and represented as an existing fact that defendants were in the process of buying the property. The rep-

resentation implied an existing condition that steps had already been taken toward the purchase of the property. It was one of the inducements that caused the plaintiffs to enter into the purchase of the store and the lease arrangement with defendants. It was not the sole factor or inducement but it was one of the inducing causes as testified to by the plaintiffs.

In connection with this false representation charged by the plaintiffs that the defendants were in the process of buying the said property from the legal owners, the defendants state that the plaintiffs do not plead nor did they prove the defendants were not in the process of purchasing the property. The evidence clearly shows plaintiffs were told by the defendants that they were in the process of purchasing the property. Defendants' evidence shows this was not a fact. Arthur C. Bone repeatedly said he had no interest in the store or premises. He said he was put in the store until it could be sold and signed the lease with plaintiffs as Redwine's agent and at his direction. He disclaimed any interest in the store and the premises.

Paragraph 4 of the petition of plaintiffs alleges "that the defendants represented to the plaintiffs that they were in the process of buying the property from the legal owners." While plaintiffs in their petition do not allege that defendants were not in the process of buying the property, they do allege generally that all of the representations of the defendants as to their right to lease said property were untrue. We think this is a sufficient allegation charging that defendants were not in the process of buying the property. The petition after verdict is sufficient.

The second and final point relied on by defendants relates to the argument of plaintiffs' counsel when he said "He (Arthur C. Bone) could have had Mr. Redwine subpoenaed if he'd a wanted to prove that he was an agent of * * *." An objection was made by defendants' counsel be-

fore the statement of plaintiffs' counsel was completed. The objection was overruled and that line of argument was not pursued. The statement was obviously directed at defendants' failure to produce Redwine as a witness to prove that defendants were acting as agents for Redwine when they leased the premises to plaintiffs. It will be recalled that Arthur C. Bone testified he was operating the store for Mr. Redwine and that he "acted as Mr. Redwine's agent in leasing" the premises. He said he signed the lease with plaintiffs at the direction of Mr. Redwine. Defendants call our attention to the rule that it is reversible error for counsel in argument to draw an unfavorable inference or to make an unfavorable comment on the failure of the opposite party to call as a witness one whose testimony is equally accessible and available to both parties. Citing Hancock v. Union Pac. R. Co., Mo.App., 231 S.W.2d 225, loc. cit. 228, 229.

In Narens v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 37, loc. cit. 42, the Supreme Court, quoting from Blick v. Nickel Savings, Investment & Building Ass'n, Mo.Sup., 216 S.W.2d 509, loc. cit. 512, said:

> " 'The term "available," as used relating to a question of comment to be made or inference to be drawn upon non-production of a witness, does not mean merely available or accessible for service of compulsory process—a subpoena. Chavaries v. National Life & Accident Ins. Co. of Tennessee, Mo. App., 110 S.W.2d 790. The question of whether a witness is "available" to one or the other of contending parties depends upon such matters as the one party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of the one party and against the other.' "

To the same effect see Adam Hat Stores, Inc., v. Kansas City, Mo.App., 307 S.W.2d 36.

The defendants in their testimony in defense of executing the lease to plaintiffs stated that in doing so they were acting as agents for Mr. Redwine. The fact of their alleged agency, whatever it was worth, was testified to several times by the defendants as an alleged defense to their actions. We think in view of the relationship the defendants bore to Mr. Redwine, that it was a fair inference from the failure of the defendants to produce Mr. Redwine as a witness that defendants knew the testimony of Redwine would be adverse and for that reason did not produce him. It seems to us that if the defendants were correct in their testimony, Redwine would be expected to testify in favor of them and against the plaintiffs on the issue in question.

The failure of a party to call witnesses who have knowledge of the facts and circumstances testified to by a party raises a strong presumption that such testimony would have been unfavorable and damaging to the party who failed to proffer the same and such failure may be commented upon in argument. Block v. Rackers, Mo., 256 S.W.2d 760. We rule this point against the defendants.

Finding no error in the points relied on by the defendants, the judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.