Iva Mae DAWES, Respondent,

v.

Charles L. ELLISTON, Appellant.

No. 23747–A.

Kansas City Court of Appeals.

Missouri.

April 1, 1963.

Thomas A. Sweeny, Kansas City, for appellant.

Robert L. Shirkey, Rogers, Field & Gentry, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff had a judgment of $15,000.00 against defendant, for personal injuries she received when defendant's automobile, in which plaintiff was a passenger, collided with another motor vehicle on Highway 66 in Missouri. Defendant appeals.

Since defendant concedes that there was sufficient evidence of defendant's negligence to make a jury case, and since it is conceded that the judgment is not excessive, we will refrain from setting out the facts regarding those issues.

The accident occurred June 19, 1955, on Highway 66 in Laclede County. Plaintiff is the mother of defendant. They and other members of the family were taking defendant's son to a military camp after he had visited his home and family. Defendant's automobile struck another car on the highway. As a result of the collision plaintiff suffered a broken hip and other severe injuries. She was sent to a hospital in Lebanon, and thence to Springfield, to a hospital, where she underwent surgery for her hip injury.

Defendant's insurer not only carried liability insurance on the car but the policy provided for medical payments for any person injured while a passenger in the car in the amount of $1000.00. While plaintiff was a patient in the hospital, on June 29, she was interviewed by insurer's attorney and agent. Her statement was taken as to the circumstances of the collision. She told him of how the accident occurred. She then stated that she would leave the hospital as soon as she could because of the great expense of treatment. She was not then informed by anyone that there was medical insurance and she evidently believed that she would have to find the money to pay for her medical expenses.

When the accident occurred plaintiff was 63 years of age. She had never passed the 8th grade examination in school. She had worked most of her active life in a laundry. She lived, with her husband, on 20 acres of land near Caplinger Mills, near Springfield. The house was not modern. She and her husband had very little income and kept two cows and some chickens to eke out their living.

She left the hospital on July 2, and went to her home. She couldn't walk so was confined in bed. She borrowed a pair of crutches from a neighbor and learned to walk on them but, eventually, had to return the crutches. Afterwards she used a cane. She got a lady, not a nurse, to stay in her home for four weeks to help her. She paid her $35.00 per week plus board and room, worth $15.00 per week.

She stated that, on August 1, defendant's agent, who had previously taken her statement, came to her home and gave her a draft for $598.60 in payment of hospital,

medical, drug, ambulance and nursing expenses. She was then unable to walk except on crutches. A full release was taken. Insurer's agent stated in evidence that, since insured was not negligent, there was no potential lawsuit in favor of plaintiff as against him and he did not discuss that matter with her. It appears that plaintiff knew but little about her rights against her son or the insurer, either under the medical insurance or for negligence.

On August 19, plaintiff went to insurer's office, after learning that she had permanent injuries, to demand a settlement for her injuries. She asked for an interview with the attorney and claim agent with whom she had been doing business, but he was out.

On August 26, he called on her at her home in response to her visit to the office on August 19. He stated in evidence that he told her that he understood that, since she had a permanent injury, she wanted a settlement; that he had already settled with her, had a release of her claim; that she said that she had a relative who had a broken hip who got twelve or thirteen hundred dollars; that she wanted $500.00 more money; that he offered her $300.00 more money, which she rejected; that he left and, after an hour or so returned and paid her $500.00 for which he took a full release from her and her husband. The release was in evidence.

Plaintiff testified as to what transpired when the attorney came to her home. She was home sitting on the bed; she was not up and around in a normal manner; she could get around a little with crutches; she had a headache and couldn't see because her glasses had been damaged in the wreck; the attorney said he would give her $200.00, then $250.00, and finally $300.00, which she refused. She stated that he stayed two or three hours, arguing; that, finally, she said that she wouldn't sign without consultation with her son or a lawyer; that he left but came back shortly thereafter. She stated that he was in a better humor when he returned. He told her: "We want it settled and you want it settled". She said that she told him that $500.00 wouldn't pay for the trips she had made and the bills to be incurred; that the attorney said: "I'll just give you $500.00 because I feel sorry for you. * * * That's all I am allowed to give you. * * * You know if you don't take this your son will lose his insurance, his license, and you won't get nothing". She said that it made her mad, nervous and upset. She believed the statement and agreed to settle. He gave her a check for $500.00 and she signed a release therefor.

█ The burden is on plaintiff to prove the invalidity of a release. Wolf v. St. Louis Public Service Company, Mo.App., 357 S.W.2d 950, 954. Defendant says that the attorney accepted plaintiff's offer to settle for $500.00 before he made the alleged misrepresentations, that is, if she didn't settle, insurer would cancel the insurance and her son would lose his license. Such contention is not borne out by plaintiff's testimony. Quite the contrary. We cannot hold that there was a meeting of the minds and a contract made prior to the alleged misrepresentations. It would be contrary to plaintiff's testimony.

█ It requires substantial evidence of fraud to require that the issue be submitted to the jury. Atchison v. Missouri Pacific Railroad Company, Mo.App., 46 S.W.2d 230.

█ Defendant contends that the above statement cannot form the basis of a charge of fraud because such a statement must relate to an existing fact; that an opinion as to the happening of a future event does not constitute actionable fraud. Such has been declared to be the law. Herzwurm v. Mound City Cab Company, Mo.App., 290 S.W.2d 203, 206. Sparks v. Rudy Fick, Inc., Mo.App., 309 S.W.2d 687, 691.

But there is an exception to that rule, as Judge Broaddus stated in Nichols v.

Hendrix, Mo.App., 312 S.W.2d 163, 165. False representations and promises as to what will result in the future, when made by one professing to have superior knowledge based on past experience of himself or others, are, in effect, false representations of existing conditions and support allegations of fraud. In Hartley Realty Company v. Casady, Mo.App., 332 S.W.2d 291, 293, we said that where defendant and his lawyer were possessed of superior means of knowledge their representations, though of law rather than fact, constituted fraud. See State ex rel. St. Louis & San Francisco Ry. Co. v. Daues, Mo., 290 S.W. 425, 428. A state of mind may be misrepresented and thus constitute a misrepresentation of fact. An existing opinion may be a fact material to the proposed transaction and a statement that such an opinion exists becomes an affirmation of a material fact and if untrue it is a misrepresentation. Sparks v. Rudy Fick, Inc., supra, p. 691 of 309 S.W.2d 687.

The statement made (as the jury found) that if plaintiff did not accept $500.00, which the attorney was giving her because he felt sorry for her, she would get nothing and her son would lose his insurance and his license we think was a statement of fact. It was made by a claims adjuster for insurer of plaintiff's son, with experience in that field. It was made with the intention that plaintiff believe it and act on it, which she did. The declarant knew it was false and that he did not believe the events predicted would or could come true. But plaintiff was an elderly woman, of little worldly experience or means, of little education and of no business experience. She was dealing where a wrong step by her might well result in great harm to her son. These elements of actionable fraud were present, and were the essentials to a submission of the issue. Sparks v. Rudy Fick, Inc., supra.

However, defendant says plaintiff was not entitled to rely on these statements, that she was required to make inquiries as to their truth, that she should have consulted an attorney or some other source of information. That is the general rule. "But, in any event, before one may rely on fraud to avoid the effect of a compromise and release, the party asserting the fraud must himself have exercised some prudence in ascertaining the truth." Sheppard v. Travelers Protective Association of America, 233 Mo.App. 602, 124 S.W.2d 528, 530. As between parties dealing at arms length, one may not rely blindly, without other information or inquiry, on what his adversary may say. Poe v. Illinois Central Railroad Company, 339 Mo. 1025, 99 S.W.2d 82, 84–85; Wood v. Robertson, Mo., 245 S.W.2d 80, 84. That is the general rule.

But the exception to the rule is stated in Wood v. Robertson, supra. Where there is a confidential relationship between the parties and thereby the victim of the fraud refrains from further investigation he may yet recover in a proper case. In this case, defendant's agent was a lawyer and he was skilled in matters of this kind. However, the record fails to show that defendant knew that he was a lawyer. Plaintiff is a woman of very limited learning and experience, and of small income or property. She had a serious and permanent injury. She did not know that there was medical insurance for her benefit, or the law with reference to medical insurance. She had asked for a settlement because of her permanent injuries. Her attorney visited her in response to that demand. He was her son's insurance representative, his alter ego in this transaction. He was a man that she could have respected and deferred to because of his position and knowledge with reference to the subject. He had previously taken her statement, with a court reporter, and had given her money to pay medical and other expenses. The jury could have well believed that she trusted him and had confidence in his integrity as her son's representative and as his insurance adjuster.

But he deceived her at the beginning of negotiations by telling her that she had already executed a full release, for $598.60,

without also telling her that it did not bind her so far as concerned her claim for injuries based on negligence. Then he told her that he was sorry for her because, as he admitted in his testimony, she had serious injuries; that he would give her $200.00 for that reason. She refused and indicated it was worth twelve or thirteen hundred dollars. He offered her $250.00 and, finally $300.00. He left in anger, or simulated anger, and she, too, had become angry. He returned with smiles and offered $500.00 which, he said, was all he was permitted to pay. She accepted because of that statement. There is evidence to the effect that the above took place, and the jury evidently believed it. If so, it was sufficient evidence of fraud perpetrated by one in a confidential relationship so as to justify invalidating the release. It was for the jury, under all of the evidence, to determine these issues.

Defendant next contends that the court erred in giving the foreman of the jury an oral instruction on the meaning of the word "fraud" out of the presence of the other members of the jury and of counsel. In Chinn v. Davis, 21 Mo.App. 363, 370, an extended whispered conversation was carried on by the judge and a member of the jury, and a reversal was ordered. Here, the juror entered the judge's chambers and asked the meaning of "misrepresentations" and the court said it related to fraud but immediately in the presence of counsel and on the record, said that he could not discuss it but that the matter would be considered with counsel and, if deemed proper, an instruction would be given. Thereafter, an instruction was given on the subject. In the case at bar, both counsel and the stenographer were present immediately after the juror entered the chambers and a record was made of proceedings. Nothing improper appears in that record. We do not think this situation is governed by the Chinn case, nor that of Hartgrove v. Chicago, B. & Q. Railroad Company, 358 Mo. 971, 218 S.W.2d 557. From the record before us we cannot say that the trial judge orally instructed the

juror. The error, if any, could not have been prejudicial.

Error is urged in the giving of instruction 3 which was to the effect that if it was found that defendant was guilty of negligence, in any degree, which caused or contributed to cause plaintiff's injuries it should return a verdict for plaintiff even though such negligence of defendant concurred with that of another to cause the injury. This was a cautionary instruction and the giving or refusing of such an instruction is within the sound discretion of the trial court. Stanley v. Stanley, Mo. App., 251 S.W.2d 365, 369. There was no abuse of discretion and the instruction fairly states the law.

Instruction No. 1 is criticized because in the first section thereof, which is an abstract declaration of the law, the words "exercise the highest degree of care" do not appear therein. This instruction in this form was approved in Gooch v. Avsco, Inc., 337 S.W.2d 245, 250, and in Salzwedel v. Vassil, Mo.App., 351 S.W.2d 829, 839. In neither case was this identical language criticized.

It is urged that error was committed in that plaintiff's counsel was permitted to and did argue matters outside the record in his closing argument. It is not specifically stated in the motion for new trial or in the brief just what statement counsel made that is objectionable. The point is not preserved so as to require a ruling.

Criticism is made of instruction No. 4, which dealt with the issue of the release. It is chiefly criticized because it it unnecessarily long, prolix, complicated, confusing, and misleading. It is unduly long but it is not confusing or misleading. For all of its length, it clearly sets forth the issue so far as the release is concerned. It is not an argument to the jury but requires that body to find essential facts stated therein. It does refer to insurance, but only as it is necessary to explain and re-

quire findings as to fraud in procurement of the release. We see no prejudicial error in the instruction and rule against defendant on the point.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.