**MARRIOTT HOMES, INC., Plaintiff,**

v.

**William T. HANSON, Defendant.**

Civ. A. No. 17893-3.

United States District Court,
W. D. Missouri, W. D.

Sept. 16, 1970.

W. Raleigh Gough, and Robert M. Coleman, Kansas City, Mo., for plaintiff.

Clyde G. Meise, of Mitchell & Meise, Kansas City, Mo., for defendant.

MEMORANDUM FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT ON THE ISSUE OF DAMAGES

BECKER, Chief Judge.

This is an action brought under the diversity statute, Section 1332 of Title 28, United States Code, in which plaintiff alleged that defendant ordered a mobile home from plaintiff but refused to pay for the home after it was delivered to him by plaintiff.

On June 23, 1970, as the result of defendant's failure to comply with Standard Pretrial Order No. 1 and to attend a scheduled deposition, default judgment was entered against him on the issue of liability. See Marriott, Inc. v. Hanson (W.D.Mo.) 50 F.R.D. 396.

Thereafter, on plaintiff's prayer for actual and punitive damages, this cause came on for a plenary evidentiary hearing at 10 a. m., July 20, 1970. On the basis of the evidence adduced at the hearing, the following findings of fact are made.

The plaintiff initially sent the mobile home in question to be delivered by its truck driver, one Silas. Silas was instructed to secure cash payment or a certified check upon delivery of the mobile home. Also, there was evidence that it was the practice of plaintiff to

attach the certificate of origin for trailers which it sold to the check of the purchaser which it received in payment and send both documents to its bank. Upon the clearing of the purchaser's check, the bank would send the certificate of origin to the customer. But on the date on which Silas attempted initially to deliver the mobile home to defendant, defendant was not present on his lot. A salesman named Boone was present and carried on the negotiations with Silas. Boone informed Silas that he (Boone) was "not qualified to write a check" for the purchase price of the mobile home. Thereupon, Silas left the mobile home on the lot, but did not leave the certificate of origin, which he returned to the plaintiff.

Plaintiff made its second effort to collect from defendant through its driver, Hill. Hill was given the certificate of origin and dispatched to the lot of defendant with instructions to collect the price of the mobile home and not to leave the certificate of origin with defendant unless he received cash payment. When Hill arrived at the lot, defendant requested that he be given the certificate of origin, stating that he would pay later. Hill then placed a telephone call to Mr. Masdon in plaintiff's headquarters and was told by Masdon to return with the certificate of origin unless he received cash payment. Hill thereupon undertook to argue with Masdon, stating that defendant was "all right." Masdon repeated his instruction that the certificate of origin should be returned unless Hill received cash payment. Hill then made profane remarks to Masdon and was finally told by Masdon that if he did not carry out orders and either receive cash payment or return with the certifi-

cate of origin, he would not have a job with plaintiff when he returned. Hill had either already given the certificate of origin to defendant before the telephone call to Masdon or gave it to him shortly thereafter.

Thereafter, when Masdon requested cash payment of Hanson, Hanson demanded over the telephone that certain repairs be made on mobile homes which defendant had previously purchased from plaintiff. Masdon asked for particulars. Hanson gave the particulars over the telephone and Masdon wrote them all down. Subsequently, Masdon took a crew to defendant's lot and worked some three days in making all of the requested repairs. Then, again, Masdon requested defendant to pay for the mobile home. Defendant replied that there was "more work to be done" and that he had no money and would send plaintiff a check for the purchase price when he obtained enough money. Thereafter, on the date of the hearing, Masdon learned that the mobile home had been sold by defendant. The price of the mobile home to defendant is established by Boone's signature on the invoice which he signed upon delivery of the home. The invoice shows the price to have been $6232.50 at the time of the delivery of the home by plaintiff to defendant. Accordingly, the evidence in this cause shows plaintiff to have been damaged in that amount and to be damaged further in the amount of interest on $6232.50 at 6 per cent per annum from May 13, 1969, the date of delivery of the mobile home to defendant.[1]

Plaintiff has also demanded punitive damages, asserting that the wrong done by defendant in this case was one characterized by fraud and deceit.[2]

---

1. In his letter brief, defendant undertakes to deny any liability at all on the ground that a new contract providing for indefinite future payment was created in plaintiff's permitting defendant to obtain the Certificate of Origin from plaintiff's driver and acquiescing in the subsequent demands of defendant for repairs on other units. These considerations are irrelevant, how-

ever, to the issue of damages and would only be relevant on the issue of liability, on which plaintiff has already taken a default judgment against defendant.

2. Plaintiff apparently asserts the rule that a promise to pay without any intention to pay constitutes a fraud. This appears to be the general and prevailing rule.

Plaintiff concludes that punitive damages are therefore warranted on the theory that defendant's having obtained the certificate of origin permits an inference of fraud and belies his intent to pay for the mobile home. Generally, however, under Missouri law, it is held that when facts "comport as well with honesty as with fraud the transaction will be held as honest." Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 302, and cases therein cited; General American Life Insurance Company v. Cole, (E.D.Mo.) 195 F.Supp. 867, 871. In the case at bar, the actions of defendant in securing the certificate of origin from plaintiff's truck driver Hill in spite of Hill's instructions not to surrender the document might well have been in good faith for the purpose of enabling him to sell the mobile home in the retail market, which was his business. Therefore, it might have been consistent with an intent to pay for defendant to have urged Hill to give him the certificate of origin without simultaneous payment. There is no evidence to the contrary. In some instances in the law of Missouri, the resale of goods purchased on credit at a time soon after the purchase might be viewed as indicating a lack of intent to pay for the goods. Bidault v. Wales, 19 Mo. 36; 37 Am.Jur. 2d Fraud and Deceit § 478, p. 661. But that is not the case at bar, in which defendant was in the business of retailing the mobile homes and wherein, furthermore, the evidence does not establish any

immediate transfer to a third party. Rather, the evidence only shows that the home had been sold by the day of the hearing because it was no longer on defendant's lot on that date. Therefore, the Court must conclude that the evidence in this cause does not clearly and convincingly make a case of fraud against defendant. No punitive damages will, accordingly, be awarded. Plaintiff relies on the Missouri case of Spitzengel v. Greenlease Motor Car Co., 234 Mo. App. 962, 136 S.W.2d 100, in which it was held that punitive damages might be recovered in trover and fraud cases in which the wrong was done "under such circumstances that the law will imply the evil intent." But that case involved an entirely different factual situation from the case at bar. In *Spitzengel*, as the Kansas City Court of Appeals noted, the evidence showed that defendant repossessed plaintiff's automobile when plaintiff had fully paid for it and had had the note marked paid by defendant. Such facts denote a different character and degree of wrong than is shown in this case.

For the foregoing reasons, it is concluded that plaintiff should have and recover from defendant damages in the sum of $6232.50 plus interest thereon at 6% per annum from May 13, 1969, and that punitive damages should not be recovered. It is therefore

Adjudged that plaintiff have and recover from defendant the sum of $6232.-50 plus interest thereon at 6% per annum from May 13, 1969.

"The prevailing rule followed by most of the courts is that fraud may be predicated on promises made without an intention of performance and that for such fraudulent promise, relief may be had in equity or law, as the circumstances and issues presented demand." 37 Am.Jur.2d, Fraud & Deceit § 68, p. 104. The rule may be otherwise in Missouri, generally. See Yerington v. Riss, Mo., 374 S.W.2d 52.

But it has been held that a state of mind or an existing purpose can be represented, and thus constitute a misrepresentation of fact to provide a basis for fraud. March v. Gerstenschlager, Mo., 436 S.W.2d 6; Sparks v. Rudy Fick, Inc., Mo.App., 309 S.W.2d 687. Under either rule, for the reasons given in the memorandum, plaintiff cannot recover punitive damages because of lack of proof of fraud.