Charles E. ABBEY, Plaintiff-Respondent,

v.

Geneva (Steele) HEINS,
Defendant-Appellant.

No. 36931.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Jan. 25, 1977.

Eugene K. Buckley, Evans & Dixon, St. Louis, for appellant.

Gregg W. Keegan, P. Terence Crebs, Fordyce & Mayne, St. Louis, for respondent.

STEWART, Judge.

Judgment in the sum of $15,000 was awarded plaintiff in his action for personal injuries against defendant, the operator of an automobile in which plaintiff was a passenger.

As an affirmative defense defendant alleged that plaintiff had executed an agreement releasing defendant from all claims arising out of the accident. Plaintiff, by reply, alleged that the release was procured by fraud. A jury returned a verdict in favor of plaintiff in the separate trial of the issue of the validity of the release.

■ It is generally held that the elements of actionable fraud are: "(1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. . . ." *Wood v. Robertson*, 245 S.W.2d 80, 82 (Mo.1952).

In this case our discussion will be confined to three of the elements. The defendant charges the trial court with error in failing to sustain his motion for directed verdict because there was, (1) no evidence of a false representation, (2) there was no evidence to show that plaintiff relied upon any representation of defendant, and (3) because the evidence failed to show that plaintiff had a right to rely upon any representation of defendant. We affirm.

■ Plaintiff admits that he signed the "agreement and release." He therefore assumed the burden of proving its invalidity by reason of fraud. *Dawes v. Elliston*, 369 S.W.2d 285[1] (Mo.App.1963).

We shall review the evidence and the inferences to be drawn from the evidence in the light most favorable to the verdict of the jury. We may consider defendant's evidence which is favorable to plaintiff and disregard that which is not favorable to plaintiff. *Frantz v. State Farm Mutual Auto Ins. Co.*, 526 S.W.2d 345[1] (Mo.App. 1975).

The accident giving rise to this action occurred shortly after midnight on February 4, 1970. Defendant's car left the road and struck a lamp post. Plaintiff lost consciousness. He suffered a compression fracture of the ninth dorsal vertebra, a chip fracture of the seventh dorsal vertebra, facial lacerations and loss of teeth.

Plaintiff was permitted to leave the hospital on the morning of February 4, upon condition that he would have someone to look after him. Plaintiff and defendant lived in the same apartment building and defendant agreed that plaintiff could stay in her apartment for his convalescence.

Plaintiff, who was 48 years of age at the time of the accident, was on a full government disability pension. He had been in the Marine Corps. In November of 1962 plaintiff was admitted to the Veterans Administration Hospital at Poplar Bluff, Missouri. He was moved to the hospital at Jefferson Barracks about three months later. The initial diagnosis was anxiety reaction chronic; duodenal ulcer active. Plaintiff remained as an inpatient at Jefferson Barracks Hospital until 1966 at which time he continued treatment as an outpatient until his discharge on January 13, 1967. The diagnosis upon discharge was "schizophrenic reaction, chronic; schizo-affected type in partial remission." At the time of his discharge he was considered well oriented, but not well. He was considered to be sufficiently competent to receive his disability payment without the assistance of a guardian. Plaintiff continued to take the medication prescribed on discharge as needed.

On the day following the accident, Stephen Patterson, the claims representative of defendant's insuror called upon plaintiff. Mr. Abbey was in bed and Mr. Patterson placed a microphone on his chest and recorded plaintiff's statement with respect to the accident and the nature and extent of his injuries. After taking the statement Mr. Patterson told plaintiff to call him after he had accumulated some bills and that he, Patterson, would come out and take care of them.

In the latter part of February plaintiff had defendant call Mr. Patterson and ask him to come by because he had accumulated some bills. On February 23, 1970, Mr. Patterson came to the apartment in response to the call. Plaintiff had paid bills in the sum of $215.96 and Mr. Patterson gave him a check. Mr. Patterson advised plaintiff that he had neglected to bring the proper form of release with him. He told plaintiff that he would trust him with the check and that he would send the proper release to plaintiff to be signed and mailed back to the insurance company.

A few days later plaintiff received a printed form, pink in color, which was titled "Release". The word "Partial" had been typed before the word "Release"; the form had been completed by typing in the blank spaces. The document was a release under the "medical payments coverage" of defendant's automobile insurance policy which is reproduced in the appendix to this opinion.

Plaintiff had Gerry F. Poe read and study the release for him because he had broken his glasses in the accident. He signed the release, had Mr. Poe sign as a witness, and mailed it to the insurance company. Mr. Poe is defendant's brother-in-law and a friend of plaintiff.

In April, 1970, defendant made a trip and was out of town for three weeks. Plaintiff, who was still convalescing, remained in defendant's apartment. There was a telephone and kitchen in this apartment. Mr. Abbey's apartment did not have these facilities. While defendant was away the porter in the apartment building helped plaintiff when he was caught up with his regular chores. For this service plaintiff paid the porter $200.00.

On May 4, 1970, while defendant was still away, plaintiff called Mr. Patterson, told him that he had accumulated additional bills and asked Mr. Patterson to stop by. On the following morning Mr. Patterson called and told plaintiff that he would come by about noon with another man. Patterson told plaintiff that he was going to add $50.00 to plaintiff's check which plaintiff should give to defendant. He also told plaintiff not to mention this in the presence of the other man.

Later that morning Mr. Patterson arrived with a Mr. Weaver, his claim supervisor. Plaintiff had been in bed; he was experiencing pain primarily in the back, and was taking two or three types of medication.

Mr. Patterson and Mr. Weaver were with him for about 45 minutes to an hour. While they were there defendant returned from her trip and remained in the apartment.

During the conversation Mr. Patterson brought up the question of settlement. Plaintiff told him he was not going to sign a final release on that day. At another point in their conversation, when Mr. Patterson asked about final settlement, plaintiff stated that he "would have to contact a lawyer concerning that." At the time he had an estimated bill from the dentist for $1,350.00; $460.00 of the amount was related to the accident. $350.00 was due for nursing services, $200.00 for the porter which he had not paid. He was still under medical care.

The conversation continued and Mr. Patterson filled out a paper. Plaintiff at one point told Mr. Patterson that he did not want to hear any more and turned to go to his bed and lie down. Mr. Patterson, referring to the document, said, "Wait you have to sign this." Mr. Patterson told him that it was the same thing he had signed before. Plaintiff saw the large print AGREEMENT & RELEASE and was told that it would be changed as before, i. e. to "Partial Agreement and Release". Mr. Patterson then marked the signature line with an "X" and plaintiff signed next to the "X". Plaintiff's reading glasses had not been repaired so he did not read the paper. Plaintiff testified that in signing the paper he relied upon Patterson's statement that it was the same as he had previously signed. This document is set out in full in the appendix.

Neither defendant nor her insurance representatives signed the release as witnesses and no attempt was made to obtain a neu-

tral person to witness the execution of the release.

Patterson gave plaintiff a copy of the release and a check for $2,200.00. The check was in all respects the same as the check he had received when he signed the medical payments check except for the amount and some coded notations. Each check stated, "In payment of loss which occurred about 2–4, 1970." Plaintiff returned to bed and Mr. Patterson and Mr. Weaver left immediately after the transaction.

In June and in August, plaintiff sent bills into the insurance company and was reimbursed. The checks, except for the amounts, were identical with those which he had received on prior occasions.

Only Mr. Weaver, the claim supervisor, for defendant's insurance carrier testified for defendant. Neither defendant nor Mr. Patterson were called as witnesses. Other evidentiary facts relevant to the issues raised will be set out hereafter.

Defendant first contends that the representation by Patterson that the "Agreement and Release" of May 5, 1970, was "like or the same as" the "Partial Release" signed by plaintiff on February 27, 1970, was not a false representation because the two documents could be said to be the same. One of the essential elements in fraud is a false representation. *Wood v. Robertson, supra.* The only similarity between the documents is that they come under the genus, "release". The document of February 27, was modified to make it a mere partial release and was confined to the medical payments portion of defendant's automobile policy. The document of May 5 was a final release of all claims under the liability portion of the policy. There is an obvious difference in these documents. If it were not enough that the document of February 27 reflected payment only under the medi-

cal pay portion of defendant's policy while the latter document had reference only to the liability portion of the policy, the greatest difference was that the first was a partial release, the latter a final release. The representation is given further significance when it is considered in the context of the discussion between the parties on May 5. Plaintiff had stated that he did not want to make a final settlement on that date; he wanted to confer with an attorney before making a final settlement.

The jury could reasonably find that Mr. Patterson represented to plaintiff that the document was a partial release under the medical payments portion of the policy. This was false.

Defendant contends that there was no evidence to support a finding that plaintiff relied upon this representation when he signed the release. As noted above plaintiff had announced his intention not to enter into a final settlement. From this alone the jury could have found that plaintiff had relied upon the representation of defendant's insurance representative that the document presented for his signature was a partial release under the medical payment portion of the policy. The plaintiff also testified that he had relied upon this representation. The question of counsel was not masterfully framed[1] but it was sufficient to permit such a finding.

A more difficult problem arises with respect to defendant's contention that plaintiff had no right to rely upon the false representation of the defendant. There are numerous cases and many broad general statements of law set up as beacons for our guidance. For example in *Kestner v. Jakobe*, 446 S.W.2d 188, 195 (Mo.App.1969) the court states, "The general rule . . . is that a party must exercise reasonable care in view of his situation to ascertain the truth before he can say he was misled, unless inquiry was prevented by the fraud-

---

1. "Q. Did you rely upon the representations that Mr. Patterson made to you when he came to you the first time that you had accumulated bills and he gave you the check for the $215., was there any difference between the representation made by Mr. Patterson the second occa-

sion when he came and got your signature, where he designated that you should sign where the 'X' was, did you rely upon what he told you on that occasion?

A. Yes, sir."

feasor, or unless the fraud-feasor has, or by artifice obtains, the confidence of his victim and anesthetizes his sense of caution."

We believe the basic concept of an action or defense in fraud is best expressed by Judge Lamm in *Judd v. Walker*, 215 Mo. 312, 114 S.W. 979, 980 (Mo.1908):

> "Fraud is a willful, malevolent, act directed to perpetrating a wrong to the rights of another. That such an act . . . should not be actionable because of . . . mere negligence or inadvertence . . . in preventing the fraud ought to be neither good ethics nor good law. . . . But when an element of willful deception leads up to a transaction, the whole situation changes . . . it ought not to be held that trust cannot be put in a positive assertion of a material fact, known to the speaker and unknown to the hearer, and intended to be relied on."

Each case of this kind must be considered and decided on its own peculiar facts. *Messina v. Greubel*, 358 Mo. 439, 215 S.W.2d 456, 459 (1948).

Many factors may be considered in the court's determination. We consider the nature of the transaction, the relation of the parties, the materiality of the representation, and the mental and physical condition of the parties. *Hanson v. Acceptance Finance Co.*, 270 S.W.2d 143, 149 (Mo.App. 1954).

We believe that in this case there was sufficient evidence to permit the jury to find that plaintiff was a schizophrenic at the time he signed the release. He had spent over three years as an inpatient in hospitals for treatment of the condition and continued treatment as an outpatient. Upon discharge plaintiff's condition was described as "chronic" and in "partial remission." He had been classified as permanently disabled. There was testimony that he was suffering from schizophrenia at the time of trial; that a schizophrenic is more or less sick all the time and has a much greater chance to make wrong decisions than normal people and that plaintiff was probably suffering from that condition at the time he signed the release. Plaintiff was also suffering from physical disabilities occasioned by the accident and was under medication. The jury could believe that defendant and the insurance carrier were not dealing with a normal person.

While plaintiff was capable of reading, his reading glasses had been broken and had not been replaced. This fact was known to defendant and her insurance representatives because the anticipated cost of replacing the glasses was discussed. He thus did not read the release. Even without his glasses he could make out the large printing at the top of the document, which read "Agreement and Release." However, Mr. Patterson assured plaintiff that he would change that as he had done before. Plaintiff asked that the release be left with him so that he could have someone study it and then he would return it at a later time but Mr. Patterson said, "Well, come on. I'll type this out later on, its getting late and you want to lay down." It was after these further inducements that plaintiff signed the release. Although it was the policy of the insurance company to require an independent witness to the release where there was any question, no one was asked to witness the release.

The insurance company's claims manual admonished its claim representatives to endeavor to establish a relationship of confidence and good will with claimants. On his first visit to plaintiff Mr. Patterson assured plaintiff that his bills would be paid as they were accumulated. In keeping with this promise Mr. Patterson appeared at plaintiff's request on February 23. He took plaintiff's word for the amount of the bills then accumulated and gave plaintiff a check. He advised plaintiff that he did not have the proper release form but that he would trust plaintiff to return the release. The release was mailed as promised. Plaintiff had a friend, defendant's brother-in-law, study the release and read it to him. The release was in fact only a partial release of plaintiff's claim under the medical portion of the defendant's policy. We believe that it is a common experience of life

that trust begets mutual trust. The jury would be warranted in finding that these transactions could cause plaintiff to place trust and confidence in defendant's insurance representative.

■ It is the defendant who was being released by the document of May 5, therefore the jury could look to the relationship of plaintiff and defendant in order to place the questioned transaction in perspective. When plaintiff was injured he was advised that he could leave the hospital only if he had someone to look after him. Defendant took him into her apartment and looked after him from February 4 until she made the trip in April. She permitted him to remain in her apartment where he had the use of kitchen facilities and telephone while she was away. The confidential relationship referred to in the cases respecting fraud, need not be a fiduciary relationship in the technical sense but may be informal. They refer to any instance where one person relies upon and trusts another. *Wilhoit v. Fite*, 341 S.W.2d 806, 813 (Mo.1960). We believe that there was sufficient evidence here to permit a finding that a confidential relationship existed between plaintiff, defendant, and defendant's insurance representative.

Defendant was present when the plaintiff was finally persuaded to sign the document on May 5. The jury could conclude that her presence was an assurance of the trustworthiness of her insurance claims man in the representations which he made to the plaintiff. See *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo.1976).

■ Defendant argues and there was evidence by way of testimony of the claim supervisor, that plaintiff consulted with defendant, explained to her that the release was a final release and asked her advice; that she told him she wanted nothing to do with the matter; that he could do as he pleased. Neither defendant nor Mr. Patterson who were present at the time were called to corroborate this testimony and the jury evidently did not believe the witness. It is not the prerogative of this court to weigh the evidence, we must disregard that testimony which is favorable to defendant. *Frantz v. State Farm Mutual Auto Ins. Co., supra.*

■ Defendant argues that the sum involved, $2,220.00 should have put plaintiff upon inquiry. The parties in their discussion covered not only present but anticipated medical expenses. The sum of $1,350.00 was mentioned with respect to dental repair. $460.00 of that amount was the result of the accident, $350.00 was to be paid for nursing care and $200.00 for the services of the porter and $100.00 per month toward defendant's rent. They also discussed the fact that there would be further medical expenses. It is not unreasonable to believe that defendant would want to make an advancement on anticipated expenses and toward the liability settlement to retain the confidence and good will of the plaintiff to avoid possible litigation.

In view of the fact that each case must be considered on its own peculiar factual situation comparisons are not determinative. It is not always easy to reconcile the various cases. Cases with factual situations similar to the case at bar which have sustained the submission of fraud are, *Dawes v. Elliston*, 369 S.W.2d 285 (Mo.App.1963) and *Schubert v. St. Louis Public Service Company*, 214 S.W.2d 420 (Mo.1948).

Defendant relies primarily upon *Kestner v. Jakobe*, 446 S.W.2d 188 (Mo.App.1969). That case can be distinguished from the case at hand primarily because in *Kestner* "plaintiff's evidence fail[ed] to establish that any false or fraudulent representation was made." It is apparent that the discussion with respect to plaintiff's "right to rely" is dicta. We have reviewed the other cases[2] cited, but do not find them controlling here.

---

**2.** *Higgins v. American Car Co.*, 324 Mo. 189, 22 S.W.2d 1043 (1929).

*Heckenkamp v. Kennedy*, 267 F.2d 887 (8th Cir. 1959).

*Allgood v. Tarkio Electric & Water Co.*, 222 Mo.App. 964, 6 S.W.2d 51 (1928).

*Alford v. Wabash Ry. Co.*, 229 Mo.App. 102, 73 S.W.2d 277 (1934).

*Poe v. Illinois Central R. Co.*, 339 Mo. 1025, 99 S.W.2d 82 (1936).

In this case defendant, through her representative, knew that plaintiff did not want to make a final settlement on that day. Mr. Patterson made the positive assertion that the document plaintiff was urged to sign was the same as the partial release under the medical coverage previously signed by plaintiff. Plaintiff was not a normal person; he did not have his glasses and none were available to him; no attempt was made to obtain an independent witness to the signing of the release. Defendant and the insurance adjustor had created an atmosphere of trust and confidence consistent with company policy. Under the peculiar facts of this case we can not say that the able trial court erred in submitting the issue of fraud to the jury.

Because of the conclusion we have reached, the other issues urged by the parties on this appeal need not be considered.

The judgment is affirmed.

CLEMENS, P. J. and DOWD, J., concur.